**UNITED STATES**

v.

**Captain Edward T. FOX, 202–40–7183 FR, United States Air Force.**

**ACM 28125 (recon).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 5 Sept. 1989.

Decided 7 Jan. 1991.

**748**

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair; Major George P. Clark and Captain Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie and Captain Morris D. Davis.

Before O'BRIEN, PRATT and RIVES, Appellate Military Judges.

## OPINION OF THE COURT UPON RECONSIDERATION

O'BRIEN, Chief Judge:

Ten days after we issued our initial opinion[1] in this case, the Court of Military Appeals released its opinion in *United States v. Wales*, 31 M.J. 301 (C.M.A.1990). *Wales* reversed the lower court decision, 29 M.J. 586 (A.F.C.M.R.1989), upon which we had relied. In accordance with Courts of Military Review Rule of Practice and Procedure Rule 19, we elected to reconsider our earlier decision in this case, and on 3 October 1990 issued an order requiring further briefs of counsel. We commend counsel for their submissions, which we have found to be particularly helpful in our attempt to sort out what has become an extremely complex area of the law. After carefully measuring the undisputed facts of this case against *Wales*, we again affirm.

Like *Wales* and the cases cited therein by Chief Judge Everett, this too is the conviction of an officer for fraternizing with an enlisted person:

> Once again, the gravamen of the fraternization charge is that there was sexual intercourse between the two. Once again, the fraternization charge has been joined for trial with an adultery charge arising out of sexual intercourse between the same two persons. (Footnotes omitted).

*Wales*, 31 M.J. at 302.

Unlike *Wales*, the accused in this case was the direct supervisor of the enlisted

---

1. *United States v. Fox*, 32 M.J. 744 (A.F.C.M.R. 1990).

person with whom he had the intimate relationship. This official relationship is as close and visible as one can get in the Air Force—he was the squadron commander; she was, at least for a time, the squadron first sergeant.

Three aspects of the *Wales* opinion impelled us to reconsider our original decision. First, as in *Wales,* we relied upon Air Force Regulation 30–1, Air Force Standards, as a sufficient basis to find that the custom violated by appellant's fraternization had been established. Second, the specification, both here and in *Wales,* conformed to the model specification[2] and contained no language alleging an official relationship between the two, other than the fact of their officer-enlisted status. Finally, the instruction given by the judge to the members in this case was virtually identical to the one criticized in the *Wales* opinion.

## PROOF OF CUSTOM

■ There are important factual distinctions between this case and *Wales.* In that case the custom was "disputed" and the official relationship between the parties was not clearly defined. *Wales* 31 M.J. at 309. Here that relationship was crystal clear. The paramour was the sometime first sergeant for the appellant, who was her commander. Whatever the status of the enforceability of Air Force customs prohibiting fraternization generally in the wake of *Wales,* there is no doubt but that appellant violated a long-standing custom of the Air Force, that officers will not fraternize with enlisted persons *under their direct supervision.* This custom was not disputed in *United States v. Johanns,* either by this Court [17 M.J. 862 (A.F.C.M. R.1983)], or by the Court of Military Appeals [20 M.J. 155 (C.M.A.1985)]; and it has been recognized in recent opinions. *United States v. Wales, supra; United States v. Appel,* 31 M.J. 314 (C.M.A.1990); *United States v. Parrillo,* 31 M.J. 886 (A.F.C.M.R.1990).

■ If further proof of this custom is required, we find it amply present in the testimony of the enlisted person with whom appellant had the affair which is the subject of the charged fraternization. She testified in some detail concerning what fraternization was and how her conduct with appellant transgressed the borders separating fraternization from an appropriate officer-enlisted relationship.

## THE SPECIFICATION

Again, we find significant differences between this case and *Wales.* In that case, the specification as originally drafted did contain an allegation of the supervisory military relationship. That allegation was removed by trial counsel, and in the words of Chief Judge Everett: "deletion of the language about a supervisory relationship constituted an implicit, but erroneous, government assertion that the deleted allegations were immaterial." *Wales,* 31 M.J. at 308. This, according to the Chief Judge, created confusion as to whether or not *Johanns* had been removed from the landscape, and whether or not an official relationship (other than that which exists solely by virtue of their officer-enlisted status) was relevant to the case.

■ In the case at bar, no such confusion ever existed, and the direct command relationship between the two was never disputed. We do not agree with the assertion of appellate defense counsel, that an *allegation* of supervisor-supervisee relationship, (other than the status of the principals as commissioned officer, and enlisted person,) is a necessary ingredient of a fraternization specification in the Air Force. (We do note however, that there is some support for this position in *Wales.*) The Government would certainly be prudent in future fraternization cases to allege and prove any official superior-subordinate relationship over and above that created by the officer-enlisted status of the principals. When the accused is the commander or supervisor, pleading and proof of that fact should avoid litigation such as this.

■ Even if we found the specification to be deficient, relief is unwarranted. It is

2. MCM, Part IV, paragraph 83(f) (1984).

significant that the form of the specification was never challenged until the case arrived here on appellate review:

> A flawed specification first challenged after trial, ... is viewed with greater tolerance than one which was attacked before findings and sentence. (Citations omitted) Although failure of a specification to state an offense is a fundamental defect which can be raised at any time, we choose to follow the rule of most federal courts of liberally construing specifications in favor of validity when they are challenged for the first time on appeal. (Footnotes omitted)

*United States v. Watkins*, 21 M.J. 208, 209 (C.M.A.1986). *See also United States v. Brecheen*, 27 M.J. 67 (C.M.A.1988).

## THE INSTRUCTION

The instruction in this case, which defines the offense of fraternization, is identical to the one found lacking by a majority of the Court of Military Appeals in *Wales*. Judge Everett wrote:

> In light of *Johanns*, appellant was entitled to have the court members specifically advised that, unless they found beyond a reasonable doubt that appellant was the supervisor of [his paramour] at the time of the alleged fraternization, they could not find him guilty.

*Wales*, 31 M.J. at 308.

Judge Sullivan found the *Wales* instruction "too confusing to support a conviction for fraternization *in the circumstances of this case.*" *United States v. Wales*, 31 M.J. 301, 310 (C.M.A.1990) (Sullivan, J., concurring in part and in the result). (Emphasis added). At first blush, these opinions would seem to be fatal to this case. Closer examination however, again discloses major and significant differences in the circumstances of these two cases.

As we have emphasized above, the official relationship of the two principals in *Wales* was unclear. The presence of the allegation of a supervisory relationship in the specifications, and then its deletion, created a situation which Chief Judge Everett believes confused the members. In this case, the relationship was assumed, patent, undisputed and conceded.

■ Whatever we think was the effect of *Johanns*, and whatever we think of its continued vitality in the Air Force, we find that the presence of a direct supervisory relationship has never been elevated to the status of a separate "element." The presence or absence of this relationship relates only to the content of the custom of the service allegedly violated. *See* MCM, Part IV, paragraph 83b(4) (1984). As we recently said in another case:

> We find as a matter of fact that a commander or supervisor who fraternizes sexually with someone under his command or supervision clearly violates a long-standing custom of the Air Force.

*United States v. Parrillo*, 31 M.J. 886 (A.F.C.M.R.1990).

■ Thus, while an instruction specifically addressing the issue of supervisory relationship may be appropriate as an adjunct to, or a component of, the general instruction on the custom element, we do not find the absence of such an instruction to, *ipso facto*, require reversal. Instead, even assuming error, we can test for harmlessness. *See United States v. Mance*, 26 M.J. 244, 256 (C.M.A.1988). Having so tested, we can perceive no way, under the facts of this case, that appellant could have been prejudiced. As noted earlier, the supervisory relationship was inescapably before the court and, without question, was part of the court's consideration of the element dealing with the custom of the service violated.[3]

We adhere to our original opinion in this case in all other respects. Accordingly, the findings and sentence are once again

AFFIRMED.

---

3. (*United States v. Parrillo, supra*).