**UNITED STATES, Appellee,**

v.

**Edward T. FOX, Captain U.S. Air Force, Appellant.**

**No. 65,803**
**ACM 28125.**

U.S. Court of Military Appeals.

Argued Nov. 13, 1991.

Decided March 6, 1992.

**100**

For Appellant: *Captain Michael D. Burt* (argued); *Colonel Jeffrey R. Owens* and *Major Bernard E. Doyle, Jr.* (on brief).

For Appellee: *Captain David C. Wesley* (argued); *Lieutenant Colonel Brenda J. Hollis* and *Major Morris D. Davis* (on brief); *Major Paul H. Blackwell, Jr.*

*Opinion of the Court*

EVERETT, Senior Judge:

A general court-martial convicted appellant, contrary to his pleas, of fraternization with a noncommissioned officer, adultery with this same woman, and adultery with a second woman, all in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The members sentenced him to dismissal from the Air Force and forfeiture of $1,000.00 pay per month for 10 months. The convening authority approved these results.

Initially, based upon its prior decision in *United States v. Wales*, 29 MJ 586 (1989), the Court of Military Review affirmed the findings and sentence. On its own motion, the court reconsidered that decision after this Court, in the interim, had reversed *Wales.* 31 MJ 301 (1990). Thereafter, however, that court again affirmed. 32 MJ 747 (1991).

On appellant's petition to this Court, we granted review of three issues relating to the lawfulness of his conviction of fraternization. 33 MJ 197 (1991). After full consideration of these issues, we conclude that appellant's conviction must be set aside.

I

Appellant, an Air Force captain, had a sexual relationship over the course of several months with a woman who was a subordinate noncommissioned officer in his chain of command. The fraternization specification in question alleged that appellant

> did, in the States of Louisiana and Texas, between on or about 18 February 1989 and on or about 5 June 1989, knowingly fraternize with MSgt Katherine C. Allen, an enlisted person, on terms of military equality, to wit: by traveling to Houston, Texas, Monroe, Slidell, Shreveport, and Lafayette, Louisiana, with the said MSgt Allen, sharing a motel room with her, engaging in sexual relations with her, and otherwise displaying undue familiarity towards her, *in violation of the custom of the United States Air Force that officers shall not fraternize with enlisted persons on terms of military equality.*

(Emphasis added.)

Prior to trial on the merits, appellant moved to dismiss this specification on the asserted ground that it represented an impermissible, discriminatory prosecution. In support, appellant offered a stipulation of fact, in which the prosecutor had joined, that outlined several instances of adultery and/or fraternization involving other persons on the same installation during the same time frame as appellant's conduct. One case involved flagrant activity of the vice wing commander. In no instance, however, was any punitive action taken. Nonetheless, the military judge denied the motion.

Once trial testimony began, Sergeant Allen took the stand. At one point, Allen was asked about the Air Force custom relating to fraternization:

Q. You're familiar with the military custom concerning fraternization?
A. Yes, sir.
Q. What does fraternization mean to you?
A. *It pretty much applies to the way in which an officer and enlisted personnel relate to one another and at what point does it cross a boundary of socializing and become fraternization.*

Q. Now, in retrospect, looking at the relationship you and Captain Fox had during this period of time between February and June 1989, did you cross the bounds?

A. Yes, sir.

(Emphasis added.)

Appellant objected to this last testimony, asserting that the prosecution had not shown Allen was competent to assert legal conclusions as to fraternization. The military judge, in response, permitted the testimony but instructed the members that Allen's testimony was "not a legal conclusion" but was only "her factual understanding and her basis and statement as to what occurred at the various occasions."

Appellant represented himself at trial, never contested the adequacy of the specification or the omission of any instructions, and admitted the essential facts. His defense was based upon his contention that his conduct had not been prejudicial to good order and discipline.

At the close of the presentation of evidence, the military judge delivered instructions that, in pertinent part, advised the members that the fourth element of fraternization was that the conduct "violated the custom of the Air Force, that officers shall not fraternize with enlisted members on terms of military equality." Concerning this custom, the military judge instructed:

Not all contact or association between officer and enlisted persons is an offense. Whether the contact or association in question is an offense depends on the surrounding circumstances. Factors that you should consider include whether the conduct has compromised the chain of command. Whether it has resulted in the appearance of partiality, or otherwise undermined good order, discipline, authority, or morale. The acts and circumstances must be such as to lead a reasonable person experienced in the problems of military leadership to conclude that the good order and discipline of the armed forces has been prejudiced by their tendency to compromise the respect of enlisted persons for the professionalism,

the integrity, and obligations of an officer.

The military judge offered no further instructions on this issue; and, as indicated earlier, appellant voiced no objection to the instructions as given.

II

■ Appellant's first attack on his conviction centers upon the purported legal insufficiency of the specification to allege fraternization. Pointing to our decision in *Wales*, appellant urges that, at least in the Air Force, a specification alleging fraternization in violation of Air Force custom must assert that there was, at the time of the conduct, a superior/subordinate relationship between the accused and the enlisted person. *See United States v. Johanns*, 20 MJ 155 (CMA), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). *See also United States v. Appel*, 31 MJ 314, 315 (CMA 1990) (pleas of guilty affirmed where specification alleged that, at the time of the fraternization, the enlisted person was "assigned to the same unit as the said Major Appel and under the supervision of said Major Appel"). Appellant, however, has read *Wales* too broadly.

Paragraph 83b, Part IV, Manual for Courts–Martial, United States, 1984, lists the following elements of fraternization chargeable under Article 134:

(1) That the accused was a commissioned or warrant officer;

(2) That the accused fraternized on terms of military equality with one or more certain enlisted member(s) in a certain manner;

(3) That the accused then knew the person(s) to be (an) enlisted member(s);

(4) That such fraternization violated the custom of the accused's service that officers shall not fraternize with enlisted members on terms of military equality; and

(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Neither this Manual provision nor the sample specification that is provided for guidance in paragraph 83f of the Manual specifically focuses on a superior/subordinate or a supervisory relationship, and for good reason: While the Air Force Court of Military Review held in *United States v. Johanns*, 17 MJ 862 (1983), *aff'd*, 20 MJ 155, that such relationship was a necessary predicate to violating Air Force fraternization custom, that need not be—and apparently is not—the case in other services.

█ What is necessary, of course, is that the "certain manner" in which the accused allegedly violated his service's custom be set out in the specification. Para. 83b(2). As we already have observed, in the Air Force—absent promulgation of some specific regulatory provision that broadens the scope of forbidden fraternization, *see United States v. Johanns*, 20 MJ 155—that "certain manner" must include a superior/subordinate or a supervisory relationship.

Contrary to appellant's contention, though, we believe the specification here passes muster under the circumstances of this case. This specification contains an allegation that appellant was a captain and that his consort was a master sergeant, an enlisted person. Moreover, the specific activity of these two people that purportedly constituted fraternizing "on terms of military equality" was set out in detail. If appellant had any question about the theory under which that activity between persons of the ranks involved constituted a violation of service custom, he could have moved to have the specification be made more definite and certain. Otherwise, *whether* that activity *did* violate Air Force custom is better viewed as a matter of proof. Where, as here, an accused challenges the sufficiency of the specification for the first time on appeal, we conclude that the requisite relationship that is at the core of the Air Force custom is fairly implied within the four corners of the specification as written.

*Wales* is distinguishable in this regard. There, the specification as originally drafted did expressly allege a supervisory relationship; however, after the second Article 32 * investigation but before trial, trial counsel deleted language referencing that relationship, apparently believing it to "be surplusage." 31 MJ at 308. Consequently, as I indicated in the lead opinion, confusion might have been generated at trial as to whether such a relationship was required in order to prove fraternization in violation of Air Force custom, as we had held in *Johanns*. Therefore, trial counsel's "deletion of the language about a supervisory relationship constituted an implicit, but erroneous, government assertion that the deleted allegations were immaterial." 31 MJ at 308.

No such implied government assertion is involved by the mere *omission* to allege *specifically* the necessary relationship. Had appellant made an issue of this omission at trial and had trial counsel in some way suggested that the relationship was not material to the specification, we would be presented with a different case. Here, though, appellant made no such trial complaint; and there were no other circumstances, as there were in *Wales*, that might have mistakenly conveyed a premise that the relationship was immaterial. Accordingly, in light of this Court's more liberal construction in favor of validity of specifications that are attacked for the first time on appeal, *see United States v. Watkins*, 21 MJ 208, 209 (CMA 1986), we hold that the relationship is adequately implied in the specification now in question.

### III

█ Next, appellant contests his conviction because the Government offered no affirmative evidence of the nature of the Air Force custom that he purportedly violated by his relationship with Allen. He argues: "In *Wales* this Court said that if the Air Force wishes to prosecute fraternization on the basis of custom, testimony must be offered by a knowledgeable wit-

* Uniform Code of Military Justice, 10 USC § 832.

ness about that custom. *United States v. Wales*, 31 MJ at 309. In the case at bar, the prosecution failed to meet that burden." Final Brief at 11.

In response, the Government answers that the testimony of Allen, quoted earlier, and that of another noncommissioned officer in the unit sufficed to establish the custom in issue. We have a good deal of sympathy with appellant's argument that Allen's testimony, substantively, does very little to establish the nature and the perimeters of any Air Force custom. Indeed, as appellant contends, her testimony does appear to be largely conclusory and circuitous on the point. Moreover, our review of the testimony of the other witness on which the Government relies reveals it to be of little better quality.

> The lead opinion admonished in *Wales*:
> [I]f the Government wishes to prosecute fraternization on the basis of a custom in the military service, testimony must be offered by a knowledgeable witness— subject to cross-examination—about that custom. To require less is to allow the factfinder to make a determination that the custom exists without any indication on the record as to what that custom is.

31 MJ at 309.

The Manual lists violation of "custom" as an element of the offense. Likewise, a violation of "custom" is alleged in the specification. The failure of the Government to prove adequately what the Air Force "custom" was precludes us from upholding the findings of guilty as to fraternization.

### IV

■ Appellant also asserts that his conviction of fraternization is fatally tainted because the military judge did not forthrightly instruct the members that, to find that appellant violated Air Force custom as to fraternization, they must find beyond a reasonable doubt that there existed at the time a superior-subordinate or supervisory relationship between appellant and Allen. Notwithstanding appellant's failure to object to this omission at trial, we agree.

As the Court of Military Review correctly concluded, "the instruction given by the judge to the members in this case was virtually identical to the one criticized in the *Wales* opinion." 32 MJ at 749. Attempts by that court to distinguish *Wales*, as well as efforts by the Government to persuade this Court to adopt the rationale of Judge Cox' dissenting opinion in *Wales*, are of no avail.

I opined in *Wales*:

> In light of *Johanns*, appellant was entitled to have the court members specifically advised that, unless they found beyond a reasonable doubt that appellant was the supervisor of Staff Sergeant Elizabeth Alcon at the time of the alleged fraternization, they could not find him guilty.

31 MJ at 308. Concurring in part and in the result, Chief Judge Sullivan found "the instructions too confusing to support a conviction for fraternization in the circumstances of this case." *Id.* at 310.

In effect, the court below distinguished *Wales* on two grounds. First, the court wrote:

> Whatever we think was the effect of *Johanns*, and whatever we think of its continued vitality in the Air Force, we find that the presence of a direct supervisory relationship has never been elevated to the status of a separate "element." The presence or absence of this relationship relates only to the content of the custom of the service allegedly violated.

32 MJ at 750. What the Court of Military Review overlooked, however, was that, in light of *Johanns*, there *is* no violation of the Air Force fraternization custom when an officer and an enlisted person engage in private, consensual sexual relations *unless* there is a superior-subordinate or supervisory relationship between them. Thus, in the Air Force, whether one characterizes that relationship as "a separate 'element' " or whether one characterizes it as the critical *definition* of the custom, failure to give the instruction discussed in *Wales* effectively sends the members off willy-nilly like an unguided missile.

■ Second, the court pointed out that, in *Wales*—unlike here—there was a good deal of confusion about the nature of the relationship, as well as an affirmative indication of confusion as to whether such a relationship was a necessary predicate for conviction. In effect, this is an argument of "no prejudice."

In *United States v. Mance*, 26 MJ 244, 255–56 (CMA), *cert. denied*, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988), we held:

> [W]hen a judge *omits entirely* any instruction on an element of the charged offense, this error may not be tested for harmlessness because, thereby, the court members are prevented from considering that element at all. In a real sense, the members in such an instance are directed to find that the evidence proves that element beyond a reasonable doubt. On the other hand, when a judge's instruction adequately identifies an element to be resolved by the members and adequately requires that the members find the necessary predicate facts beyond a reasonable doubt, then an *erroneous* instruction on that element may be tested for harmlessness.

The omitted instruction here fits neatly into neither of the categories mentioned in *Mance*. Of course, the members *were* instructed that, to convict appellant, they must find that he violated an Air Force custom and, as quoted earlier in this opinion, the military judge did discuss factors that might help the members determine whether the officer/enlisted contact in this case was prejudicial to good order and discipline. However, as we just observed, the instructions regarding the "custom" element of fraternization offered no definition, no guidance, no focus on what is, in the Air Force, a critical requirement concerning the relationship.

Under these circumstances, it is as if no mention at all had been made of the need to find a violation of a custom: The members hardly could find a *violation* without any instruction at all as to the *custom*. Given the state of these instructions, there is no basis for concluding that the members affirmatively found "the necessary predicate facts beyond a reasonable doubt." Accordingly, we may not appropriately test for prejudice here.

### V

The decision of the United States Air Force Court of Military Review is reversed as to specification 1 of the Charge and the sentence. The finding as to that specification is set aside, and that specification is dismissed. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for appropriate action on the sentence. *See United States v. Sales*, 22 MJ 305 (CMA 1986).

Chief Judge SULLIVAN concurs.

Judges CRAWFORD, GIERKE, and WISS did not participate.

COX, Judge (dissenting):

I respectfully dissent. *See United States v. Wales*, 31 MJ 301, 310 (CMA 1990) (Cox, J., dissenting in part and concurring in the result).