OPINION OF THE COURT
STUCKY, Judge:
Colonel Lyonio B. Nunes was convicted, by a judge-alone general court-martial, notwithstanding his pleas, of two specifications of wrongfully committing indecent acts and one specification of fraternization in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced to a dismissal, 100 days con *888 finement, and forfeiture of $1000 pay per month for 5 months. The convening authority approved the sentence as adjudged. On appeal, three errors are asserted. First, it is claimed that the evidence is insufficient to sustain the military judge’s finding of guilty to specification 2 of Charge II, the fraternization offense. Second, the appellant argues that the military judge should have conducted a “striker inquiry” after the defense counsel’s argument on sentencing, since he in essence requested a dismissal. Finally, the appellant asks us to exercise our powers under Article 66(c), UCMJ, 10 U.S.C. § 866(c), and set aside the findings of guilty as to the indecent acts charges and specifications.
I
The first contention is that the evidence is factually and legally insufficient to sustain the findings of guilty with respect to the fraternization offense. The facts in this case are unusual, to say the least. The appellant, a physician, was the clinic commander at Izmir Air Base, Turkey. Senior Airman Sean E. Wright (later Sergeant Sean Nunes) was an enlisted member assigned to the clinic, and therefore in the appellant’s chain of command. It is undisputed that the two developed a close personal relationship, which evidently began when SrA Wright spoke to the appellant about personal problems he was experiencing. Both men had personal troubles; the appellant had been divorced and treated for depression, while SrA Wright had experienced an abusive childhood and a broken marriage. There was, as well, a mystical dimension to the relationship. Both men were devout Roman Catholics. The appellant testified that he and his sister had a vision as young people in Brazil, and that SrA Wright had a “recurring dream” which in detail matched the vision. This, according to their testimony, prompted them to conclude that their meeting and developing relationship was the will of God. They engaged in pious exercises — novenas, praying the rosary — together. Eventually, at a time after that covered in the specifica-
tion, the appellant adopted SrA Wright, with the consent of his biological mother.[1]
At the same time, there was a substantially more secular side to the relationship between the two. The appellant admitted to going to a nude coed beach resort with SrA Wright, and to twice visiting a Turkish bath house with him. SrA Wright admitted they went to lunch together, cooked dinner together, went fishing together, went to the movies together on several occasions, and, for some months, saw each other socially about three times a week. They went on a day trip together, and, several witnesses testified, were seen together in public in the town. Even' after the appellant’s commander ordered him to cease contacts with SrA Wright, they met occasionally and remained in daily telephone contact.
The appellant argues that none of this constitutes association on terms of “military equality,” which is an element of the offense under Article 134. We disagree. While the outer boundaries of what constitutes fraternization are not always clear, we have no hesitation in finding that a relationship between an officer and an enlisted person under his command, extending over several months and including numerous social meetings as a couple, constitutes association on a basis of military equality. That no sexual relationship was alleged is utterly irrelevant. This case is a useful corrective to the common notion that fraternization perforce must include sexual hanky-panky. In fact, it is the illicit association between officers and enlisted personnel on terms of equality, not any particular sexual relationship (or any such relationship at all) that is the gravamen of the offense. MCM, 1984, T83b; W. Winthrop, Military Law and Precedents 716 (1920); United States v. McCreight, 39 M.J. 530 (A.F.C.M.R.1994); United States v. Appel, 31 M.J. 314 (C.M.A.1990). We can do no better than quote what our Navy brethren said on the subject over 40 years ago:
[Ejach case must be determined on its own merits. Where it is shown that the acts
*889 and circumstances are such as to lead a reasonably prudent person, experienced in the problems of military leadership, to conclude that the good order and discipline of the armed forces has been prejudiced by the compromising of an enlisted person’s respect for the integrity and gentlemanly obligations of an officer, there has been an offense under Article 134.
United States v. Free, 14 C.M.R. 466, 470, 1953 WL 2781 (N.B.R.1953).
Finally, the appellant asserts that the government has not shown that his conduct was prejudicial to good order and discipline. He points to his success as commander in an inspection of his clinic and to testimony that morale among enlisted personnel at the clinic declined following his departure. This argument avails him nothing. While prejudice to good order and discipline is an essential element of the offense, it is not to be determined by isolated achievements or public-opinion polls. There was ample evidence to show that the appellant’s open and notorious relationship with SrA Wright had an adverse effect upon good order and discipline. It prompted a counseling session with his commander, and his eventual removal from command. One airman testified she had a problem with an incorrect telephone bill, mentioned it to the appellant, but received no help until SrA Wright developed a similar problem. There was substantial testimony that the relationship was well known in the clinic, and it spawned talk and rumors among those under the appellant’s command. Having become public (indeed, it appears it was never private), its deleterious effects on good order and discipline were amply shown in the evidence. United States v. Collier, 36 M.J. 501 (A.F.C.M.R.1992).[2]
Applying the criteria for legal and factual sufficiency of the evidence set out in United States v. Turner, 25 M.J. 324 (C.M.A.1987), we find the evidence to be both legally and factually sufficient.
II
The appellant’s second contention is that the military judge erred in not conducting a “striker inquiry” when the defense counsel argued, in the sentencing portion of the trial, for a dismissal. The specific language in question is as follows:
If you can’t reconsider, if you can’t find that within your ability to do, then Your Honor, the defense would suggest to you that the best possible thing that could happen right now is to simply dismiss Colonel Nunes. And that is a severe penalty. A dismissal is the ultimate dishonor for an officer leaving the United States military. It is the worst form of way that an officer can possibly leave the U.S. military. It’s a departure in utter disgrace. And you know that, Your Honor, and others know that. So how can you characterize it by saying you are simply being dismissed.
[R. 392]
Generally, the military judge must inquire of the accused whether he understands the consequences of a punitive discharge and authorizes his counsel to argue for one, if counsel proposes to do so. United States v. Volmar, 15 M.J. 339 (C.M.A.1983). The problem with appellant’s argument is that the military judge explicitly stated that he did not view the argument as one asking for a dismissal, and the defense counsel eschewed any intention of doing so.
When viewed in its entirety, defense counsel’s sentencing argument was more than a plea for a lesser sentence; it was an explic *890 it plea that the military judge exercise his power under R.C.M. 924(c) to reconsider his findings of guilty.[3] The statement made by defense counsel must be seen in this context, as is obvious from its first words. It is hardly an explicit or implicit request for a dismissal. Given that the military judge in this judge-alone trial explicitly did not regard it as such, and the defense counsel explicitly did not intend it as such, no “striker inquiry” was necessary and no error occurred.
Ill
Finally, the appellant requests that we exercise our powers under Article 66(c), UCMJ, and set aside the findings of guilty as to the indecent act charges and specifications. Candidly, he asks that we “substitute [our] opinion for that of the trier of fact.” Article 66(c) provides that a Court of Military Review may “affirm only such findings of guilty ... as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.” The test for factual sufficiency is that stated in Turner, ie., whether after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the appellant’s guilt beyond a reasonable doubt. United States v. Thom, 36 M.J. 955 (A.F.C.M.R.1993).
The indecent acts specifications alleged that appellant, while engaged in medical examinations of two male patients, A1C F and Major S, masturbated them under the guise of obtaining laboratory samples. The appellant claimed he was only engaging in “urethral milking,” an accepted medical procedure.
The appellant argues the “mistaken belief that he and [SrA Wright] were engaged in homosexual behavior ... permeated the entire trial.” He concedes that the victims of the indecent acts, A1C F and Major S, are “... telling the truth as they believe it,” but argues that their hearing about the appellant’s relief from command, coupled with the homosexual innuendos, resulted in mistaken testimony.
We disagree. It frankly strains credulity that two mature men could be mistaken about acts of masturbation performed upon them when they were awake and unimpaired. In light of the expert testimony of a urologist that such acts would never be accepted medical procedure, and further evidence that Major S complained that something improper had taken place without having heard of the appellant’s relief from command, we find the testimony of the victims worthy of belief and the appellant’s denial unconvincing. We have carefully considered the evidence of record and, making allowances for not having seen or heard the witnesses, we are convinced beyond a reasonable doubt of the appellant’s guilt of the indecent acts specifications.
The findings and the sentence are
AFFIRMED.
Senior Judge SNYDER and Judge YOUNG concur.

. Appellant does not contend that the adoption confers any sort of retroactive validation upon acts before it.

. The appellant implies that he ought not to be found guilty of fraternization since, at Izmir Air Base, other officers engaged in similar activities and the general custom there did not disapprove them. It is, of course, no defense to a criminal charge that others have done the same thing. If the appellant is trying to show that he was singled out for prosecution, he must show discriminatory intent on the part of the government, something he has not even attempted to do. United States v. Hagen, 25 M.J. 78 (C.M.A.1987), cert. denied, 484 U.S. 1060, 108 S.Ct. 1015, 98 L. Ed.2d 981 (1988). The real problem with his argument is that the relevant custom is that existing in the Air Force generally, not at a particular isolated installation. It is settled that, as regards officers and enlisted persons in the same chain of command, such a custom exists in the Air Force and is enforceable under Article 134. United States v. Johanns, 17 M.J. 862 (A.F.C.M.R.1983); United States v. Fox, 32 M.J. 747 (A.F.C.M.R.1991), rev’d on other grounds, 34 M. J. 99 (C.M.A.1992).

. Although the appellant now styles it a "motion,” there was no motion, only an exhortation to the judge to reconsider.