**UNITED STATES**

v.

**Lieutenant Colonel Ronald H. KROOP, 145–38–4929, United States Air Force.**

**ACM 28424 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 Jan. 1990.

Decided 28 Jan. 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Captain Michael D. Burt.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major Jeffrey C. Lindquist, and Captain David C. Wesley.

Before LEONARD, RIVES and McLAUTHLIN, Appellate Military Judges.

## OPINION OF THE COURT UPON FURTHER REVIEW

LEONARD, Senior Judge:

This is an unfortunate case of a senior officer's involvement in adulterous affairs with an officer and an enlisted woman. Discovery of these affairs resulted in appellant being charged and convicted of three specifications of conduct unbecoming an officer. A military judge sitting alone sentenced him to a dismissal and a $5,000 fine.

The first time this case came before us we noted that the convening authority acting on appellant's case was himself suspected of sexual misconduct similar to that alleged against appellant. In "an abundance of caution over the need to preserve the appearance of propriety in the military justice system," we set aside the action

taken by that convening authority. We remanded the case for new staff judge advocate's recommendations and new action by a different convening authority.

A new convening authority has reviewed and acted on appellant's case and approved only so much of the sentence as provided for a fine of $5,000. The record is now back before us to address issues raised in appellant's original assignment of errors and two supplemental assignments of error.

In his latest supplemental assignment of errors, appellant contends that we erred by refusing to direct disclosure of the investigative reports of the original convening authority's misconduct or to set aside appellant's conviction because of an improper referral. His prior assignments of errors asserted that the three specifications of which he was convicted did not state offenses under the UCMJ; two of the specifications were multiplicious; his pleas of guilty were improvident; the military judge erred in refusing to admit a defense exhibit; and his sentence was too severe. We find merit in some of these earlier assertions and set aside some of the findings of guilty.

## I. DENIAL OF APPELLATE DISCOVERY OR IMPROPER REFERRAL

Prior to our first decision, appellant requested appellate discovery of investigative reports and any other documents from any inquiry concerning his convening authority's misconduct. We denied that request. He now maintains we erred in refusing this appellate discovery or, in the alternative, ordering a fact-finding inquiry to determine the facts of the convening authority's misconduct. He further argues we should have set aside his convictions and the referral of his charges because of the potential impact upon that referral of the unresolved allegations of similar misconduct by the referring convening authority.

We find no error in our refusal to grant appellate discovery or order a fact-finding inquiry. We also find no defect in the referral of appellant's charges that would warrant setting aside that referral and the resultant convictions.

■ For the purpose of resolving these issues, we will assume that appellant has a right to appellate discovery. However, we find no possible relevance to his case of the material appellant seeks, assuming that it exists. We arrive at this conclusion after reviewing the roles that the general court-martial convening authority played in this case.

The record shows this case arose at a base distant from the headquarters of the general court-martial convening authority. The appellant was the commander of the civil engineering squadron at Mountain Home Air Force Base, Idaho. After a preliminary inquiry into the basis for the charges, the commander of the 366th Combat Support Group at Mountain Home Air Force Base preferred the charges. He forwarded them to the commander of the 366th Tactical Fighter Wing, a unit of Tactical Air Command also headquartered at Mountain Home Air Force Base. Appellant did not avail himself of a full investigation of the charges as was his right under Article 32, UCMJ. Instead, he waived the Article 32 investigation and the wing commander forwarded the charges to the general court-martial convening authority, the commander of a numbered air force headquartered at Bergstrom Air Force Base in Texas. The record shows no earlier involvement by the numbered air force commander.

The general court-martial convening authority received the advice of his staff judge advocate required by Article 34, UCMJ, 10 U.S.C. § 834. After receiving that advice, the convening authority detailed the members of the court-martial and referred this case to it for trial. As is typical in Air Force practice, he did both contemporaneously. Although in some cases a general court-martial convening authority might do other acts before trial, the record shows none in this case.

The pleadings to date have shown only one possible relevance of an investigation of the convening authority's own miscon-

duct. It might show that he had committed crimes of a sexual nature similar to appellant's or that his own misconduct was at least equally reprehensible as appellant's even if it were not criminal. Our prior disposition recognized that the effect of the consciousness of one's own misbehavior might influence decisions about the misbehavior of others. We must now decide whether there is any such potential for prejudice at referral and selection of the members of the court-martial.

## A. Referral

██ Referral is simply a decision to try the charges referred and says nothing about ultimate guilt or punishment. Furthermore, there is an objective standard for referral. The convening authority need only find or be advised there are reasonable grounds to believe an offense triable by court-martial has been committed, the accused committed it, and the specification setting forth the offense properly alleges a UCMJ offense. R.C.M. 601(d)(1). *See* Article 34(a), UCMJ, 10 U.S.C. § 834(a). Thus, we can examine the advice of the staff judge advocate under Article 34 to determine whether the evidence warranted trial by court-martial and, if it did, conclude that the case would have been referred to trial by *any* convening authority, regardless of any psychological baggage.[1] We have done that in this case, and we find the advice provided the required grounds for referral.

██ We face a more difficult question when we consider a convening authority's choice of forum, for there is no objective standard for this decision. However, considering that appellant was a senior officer and commander accused of sexual harassment and sexual misconduct with a subordinate officer and sexual misconduct with an enlisted woman, we conclude that referral to a general court-martial was certainly not an abuse of discretion and was a likely decision of any convening authority.

██ Therefore, only one question remains about the referral: Was it by a

person disqualified to act? Article 22(b), UCMJ, 10 U.S.C. § 822(b). There is only one such disqualification: The convening authority was an accuser. The term "accuser" is given broad meaning. It includes any person whose interest in the matter is "other than official." Article 1(9), UCMJ, 10 U.S.C. § 801(a); R.C.M. 601(c), Discussion. *United States v. Thomas*, 22 M.J. 388 (C.M.A.1986), on which appellant relies exclusively in this regard, discusses several examples of circumstances that illustrate the kind of interest that is disqualifying. All the convening authorities found disqualified in those examples suffered some direct involvement with the accused's crime, much more palpable than the possibility of subtle subconscious influences arising from a person's awareness of his own misconduct. We do not find appellant's original convening authority disqualified from referring his charges to trial by court-martial.

## B. Detailing Court Members

██ Having found the collateral events in this case to be other than disqualifying even if proven, we turn to the convening authority's role in selecting and detailing the members of a court-martial. Does that responsibility require that the convening authority be free of misconduct? We think not. There are remedies for discovery and correction of errors that affect selection of members of a court-martial. Pretrial questionnaires and voir dire permit an accused to participate directly in an examination of the qualifications of each of the members. R.C.M. 912(a)(1), (d), and R.C.M. 912(a)(2) and (b) give an accused access to the selection procedures and a special opportunity to correct any error that affects the process. Further, appellant's convening authority did not personally compile the pool of officers used to select appellant's court members. He selected the court members from a pool of potential court members nominated by the commander of 366th Tactical Fighter Wing.

1. If referring court-martial charges could only be done by those who were themselves totally "without sin," there would be precious few cases for this Court to review and few judges to review them.

We are fully satisfied that, in this case, any collateral misconduct of the convening authority did not affect his selection and detailing of court members or disqualify him from referring this case. Therefore, the details of any misconduct that the convening authority might have committed are irrelevant, and the requested discovery is unwarranted.

## II. FAILURE OF SPECIFICATIONS TO STATE OFFENSES AND MULTIPLICITY

In addressing appellant's other assertions of error, we will first summarize the factual background of appellant's offenses and then proceed by considering each specification and how the assertions of error relate to that specification.

### A. Facts

Appellant served as the commander of the 366th Civil Engineering Squadron at Mountain Home Air Force Base, Idaho. He was married, had been on active duty since July 1967 and had compiled an outstanding record.

In January of 1989, he became friendly with Staff Sergeant P who worked in the base contracting office. Appellant's command did not include the contracting office and he did not supervise Sergeant P. However, Sergeant P's duties included the military construction program and those duties brought her into frequent contact with appellant. Appellant learned that Sergeant P was having marital problems and was to be divorced on 21 February 1989. He offered her sympathy and invited her to talk with him about her marital problems and feelings. After her divorce, their relationship evolved into a sexual affair. He sent her several cards and letters professing his love and they had numerous sexual liaisons at her off-base home.

Appellant's relationship with Sergeant P continued until June of 1989. At that time, Sergeant P suggested that they break off the relationship until appellant resolved his marital situation. Although appellant agreed, he continued to send her notes and to call her on the telephone.

On 20 March 1989, Second Lieutenant C arrived at Mountain Home Air Force Base for assignment to appellant's squadron as a design engineer. Not too long after her arrival, she informed him of her marital problems and he provided her advice in his capacity as her commander. On a joint temporary duty (TDY), she again confided in him concerning her marital problems and he offered a sympathetic ear. On 20 August 1989, appellant and Lieutenant C went TDY together to Los Angeles Air Force Base and Santa Barbara, California. During this trip, they twice engaged in sexual intercourse in his hotel room.

Lieutenant C and appellant continued their sexual relationship on another TDY to Langley Air Force Base, Virginia and Washington, D.C. on 28 and 30 August 1989. Upon their return to Mountain Home, Lieutenant C asked to break off the relationship because her husband had learned of it. However, in the weeks following this conversation, she stopped by appellant's office and left a red rose for him and, on other occasions, stated she wanted to be his lover. Because of mixed signals and "confusion," appellant continued to pursue the relationship, left cards and notes for her and continued to make sexual advances and comments to her through September and the first few days of October 1989. The situation culminated in a confrontation with Lieutenant C, her husband, and appellant in appellant's office during duty hours. Mr. C filed a complaint with the security police on 6 October 1989.

### B. Specification 1

Specification 1 alleged that appellant:

"a married man ... in a position of command, did ... between on or about 1 August 1989 to on or about 31 August 1989, wrongfully behave with undue familiarity, wrongfully engage in excessive social contacts, and wrongfully have sexual intercourse with Second Lieutenant C, a married female, a subordinate under the command of the said Lieutenant Colonel Ronald W. Kroop, which conduct, under the circumstances, was unbecoming an officer and a gentleman."

Appellant maintains that this specification fails to state an offense and the military judge erred in failing to grant the defense motion at trial to dismiss the specification. He argues that an offense under Article 133, UCMJ, 10 U.S.C. § 933, that is not an offense listed elsewhere in the Manual for Courts–Martial, must be a violation of a custom of the service. He then argues that the specification does not describe the offense of adultery listed under Article 134, UCMJ, 10 U.S.C.A. § 934 because it does not specify that Lieutenant C was not his wife. His final point is that the specification is so vague there is no assurance that appellant could plead a conviction of this offense as a bar to subsequent prosecution for the same conduct. *United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953).

■ We partially agree with appellant's argument; however, we find that the specification does allege an offense punishable under the UCMJ. Despite the missing words "a woman not his wife" we find that the specification contains within it the offense of adultery. The specification alleges that both Lieutenant C and appellant were "married" and that appellant "wrongfully" had sexual intercourse with Lieutenant C. The most logical conclusion that could be drawn from those allegations is that appellant and Lieutenant C were not married to each other. Further, in his stipulation of fact and during his guilty plea inquiry, appellant admitted that Lieutenant C was not his wife. Therefore, we find that appellant was sufficiently apprised of the nature of the offense and the specification described the offense with sufficient particularity to allow him to show a former conviction for adultery with Lieutenant C, if the need ever arose. *Sell*, 11 C.M.R. at 206.

■ However, some of the words alleged in the specification give us cause for concern. The allegations of behaving with "undue familiarity" and engaging in "excessive social contacts" appear to be an allegation akin to wrongful fraternization. However, absent a special regulatory prohibition, fraternization is only an offense in

the military when it involves relations between an officer and an enlisted person that violate a custom of the service. MCM, Part IV, paragraph 83b and c (1984). Other than special training situations in Air Training Command, we are not aware of any general regulations that prohibit "undue familiarity" or "excessive social contacts" between fellow officers. Without a regulatory prohibition, such an offense would have to be based on a custom of the Air Force of sufficient long standing as to give appellant and other officers adequate notice of the type of conduct that would violate the custom. *Parker v. Levy*, 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *United States v. Johanns*, 20 M.J. 155 (C.M.A.1985), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). Finally, there was no evidence in appellant's record of trial of either a custom of the service or a regulatory provision forbidding the charged "undue familiarity" or "excessive social contacts."

The problem in defining or proving such a custom is readily apparent. Officers are expected to socialize with each other. Officers may date other officers, treat each other with various degrees of intimacy, and marry each other. What one person might regard as "undue familiarity" or "excessive social contacts" another person might regard as mere friendly socializing or demonstrations of concern for one's subordinates. This difficulty manifested itself during appellant's guilty plea inquiry when the military judge tried to pin down appellant's conduct that was "unduly familiar" or constituted "excessive social contacts." There was no confusion about the wrongfulness of the sexual intercourse, but other contacts that constituted the offense were difficult to label as wrongful per se. Similarly, the stipulation of fact entered into by appellant and his counsel was understandably hazy about the "undue familiarity" and "excessive social contacts."

For these reasons, we hold that the portion of specification 1 that alleges appellant did "wrongfully behave with undue familiarity" and "wrongfully engage in exces-

sive social contacts" with Lieutenant C does not state an offense. Accordingly, appellant's plea of guilty was improvident to that portion of the specification. Appellant's finding of guilty to those words is set aside. We find that the remainder of that specification, excepting the above words, does state an offense and that appellant providently pleaded guilty to the stated offense.

### C. Specification 2

Specification 2 alleges that appellant: while in a position of command, did, . . . between on or about 1 September 1989 to on or about 5 October 1989, wrongfully make sexual advances and verbal comments of a sexual and intimate nature to Second Lieutenant C, a married woman not his wife, a subordinate under the command of the said Lieutenant Colonel Ronald H. Kroop, which conduct created an intimidating, hostile, and offensive environment, and under the circumstances, was unbecoming an officer and a gentleman.

 Appellant asserts this specification also fails to state an offense and the military judge erred in failing to grant the defense motion to dismiss it. His second assertion is that if the specification does state an offense, it would be multiplicious with the first specification and the military judge erred in failing to grant the defense motion to dismiss for multiplicity.

We do not agree with either of these assertions; however, our disposition of this offense makes it unnecessary to resolve these issues.[2] We find that appellant's plea was improvident in that he did not admit enough facts to establish his guilt of the offense.

During his guilty plea inquiry, appellant admitted that he was Lieutenant C's commander during the period alleged and that he did continue to contact her and discuss their intimate relationship during this peri-

od. However, despite the military judge's repeated inquiries, he refused to admit that he exhibited any hostility towards Lieutenant C or in any way created an intimidating, hostile or offensive environment for her. The most he would admit was that, sometimes, she exhibited some hostility towards him. He maintained that their lovers' disagreements did "absolutely not . . . affect the professional relationship I had with her." He continued to contend that he was receiving mixed signals from her— some telling him to leave her alone and others showing that she wanted to continue their relationship. He further stated that he was still concerned for her as an individual and did not want to appear to reject her.

 When an accused's plea of guilty does not admit sufficient facts to make the plea provident or raises matters inconsistent with guilt, the military judge should reject the plea or conduct further inquiry to resolve the inconsistencies. *United States v. Palus*, 13 M.J. 179 (C.M.A.1982); *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980); *United States v. Advincula*, 29 M.J. 676 (A.F.C.M.R.1989). When a record reaches us and the plea inquiry contains unresolved inconsistencies or does not admit facts sufficient for guilt, we must set aside the conviction. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); Article 45(a), UCMJ, 10 U.S.C. § 845(a); R.C.M. 910(c)(5) and (e).

Finding appellant's plea improvident, we set aside his conviction of specification 2 of the Charge. Considering appellant's approved sentence and the time that has elapsed since his trial, we find a rehearing on this offense would be impractical. Therefore, in the interests of judicial economy, the specification is dismissed.

### D. Specification 3

Specification 3 alleged that appellant:

---

**2.** We note that the specification would appear to describe an offense of sexual harassment that could be properly charged under Article 93, UCMJ, 10 U.S.C. § 893, Article 133, UCMJ, 10 U.S.C. § 933, or as a violation of Air Force Regulation 30–2, *Social Actions Program,* (April

1986), charged under Article 92, UCMJ, 10 U.S.C. § 892. Charging the offense in any of these ways would have properly placed appellant on notice of the offense and adequately protected him from future prosecution for a similar offense. *Sell,* 11 C.M.R. at 206.

a married man, did, ... between on or about 22 February 1989 and on or about 30 September 1989, wrongfully behave with undue familiarity, wrongfully engage in excessive social contacts, and wrongfully have sexual intercourse with Staff Sergeant P, an enlisted woman on active duty, not his wife, which conduct, under the circumstances, was unbecoming an officer and a gentleman.

Appellant attacks this specification on two grounds. First, as with the other specifications, he asserts the military judge erred in failing to grant the defense motion to dismiss this specification for failing to state an offense. Second, he maintains his guilty plea was improvident to this offense because it alleges fraternization with an enlisted person that appellant did not command or supervise. We find that the specification does state an offense under the UCMJ, but we agree in part with appellant's assertion concerning the fraternization aspect of the allegation.

■■■ We find the specification does state an offense under the UCMJ because it contains an allegation of adultery. The specification alleges that appellant, a married man, wrongfully had sexual intercourse with a woman who was not his wife. This allegation is sufficient to allege adultery. MCM, Part IV, paragraph 62b and f (1984).

■■■ However, we agree with appellant that the specification also appears to allege fraternization. The pertinent portion is the allegation that appellant did "wrongfully behave with undue familiarity" and "wrongfully engage in excessive social contacts" with "an enlisted woman on active duty." Such terms are very similar to "fraternized on terms of military equality" that is one of the elements of fraternization.[3] MCM, Part IV, paragraph 83b (1984). Further, the specification also contains within it two other elements of fraternization—that appellant was a commissioned officer and that the other party was

an enlisted woman. *Id.* The only element of fraternization missing is the element of a violation of a custom of the service. *Id.*

To resolve this issue it is not necessary that we find that specification 3 charged appellant with fraternization. Regardless whether the words in question charge fraternization under Article 134, UCMJ, or as a separate Article 133, UCMJ offense; treating an enlisted woman with "undue familiarity" or engaging in "excessive social contacts" with an enlisted woman will only be an offense in the Air Force if such conduct violates a custom of the Air Force. *Parker*, 417 U.S. at 755, 94 S.Ct. at 2561; *Johanns*, 20 M.J. at 158–161; *United States v. Arthen*, 32 M.J. 541, 545 (A.F.C.M.R.1990); *United States v. Parrillo*, 31 M.J. 886, 891 (A.F.C.M.R.1990).

Present law identifies a custom of the Air Force prohibiting an officer from treating an enlisted woman in such a manner only when the officer supervises or commands the enlisted woman. *United States v. Wales*, 31 M.J. 301, 307 (C.M.A.1990); *Johanns*, 20 M.J. at 161; *Arthen*, 32 M.J. at 546; *Parrillo*, 31 M.J. at 892.

There was no proof in appellant's guilty plea inquiry or the stipulation of fact that appellant either supervised or commanded Sergeant P. In fact, the proof was all to the contrary. Appellant and Sergeant P were in separate squadrons and worked in completely separate work areas. Therefore, we are unable to find any supervisory or command relationship to support a finding of guilty to that portion of specification 3 that alleges appellant did "wrongfully behave with undue familiarity" and wrongfully engage in "excessive social contacts" with Sergeant P. *United States v. Appel*, 31 M.J. 314, 321 (C.M.A.1990); *Arthen*, 32 M.J. at 546. We find appellant's plea improvident with respect to these words and set aside that portion of his finding of guilt. We find that the remainder of the specification properly states the offense of adultery under Article 133, UCMJ, and that

---

**3.** The words "familiar association" or "associating on familiar terms" were used in the past to describe fraternization offenses charged under the 61st Article of War which was the predeces-

sor to Article 133, UCMJ. *See* W. Winthrop, *Military Law and Precedents* 716 n. 44 (2d ed. 1920).

appellant's plea was provident to that offense.

### III. REFUSAL TO ADMIT A DEFENSE EXHIBIT

 Appellant also asserts that the military judge erred when he refused to admit Defense Exhibit Q—a letter from Chaplain Richard D. Oberheide. The defense offered this exhibit during the sentencing portion of the trial with many other letters, certificates, and awards.

The government objected to the exhibit on the grounds that the chaplain was unqualified to give the expert opinions contained in the letter as to appellant's personality and the causes of his problems. They also asserted that the communications to clergy privilege would prevent cross-examination on the statement. The military judge refused to admit the letter unless appellant waived the communications to clergy privilege and allowed the court to explore the basis for Oberheide's expertise to form the opinions contained in the letter. We find the military judge's ruling to be in error.

Before his ruling on this exhibit, the military judge had appropriately relaxed the rules of evidence for both parties for admission of sentencing evidence. *See* R.C.M. 1001(c)(3). He had already admitted a letter offered by the government and 20 such exhibits for the defense. Two other letters from chaplains, which also expressed opinions about appellant's problems and their causes, were among the exhibits admitted without objection.

The government's contention that Chaplain Oberheide might not have the expertise to express the opinions contained in the letter was not a valid reason to refuse to admit the exhibit under the circumstances of this case. The first paragraph of the exhibit stated Chaplain Oberheide's expertise to form the opinions expressed. The test for admitting expert opinions is whether the "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Mil.R.Evid. 702. This is a permissive rule that encourages the use of expert opinions rather than restricting their use. S. Saltzburg, L. Schinasi and D. Schlueter, *Military Rules of Evidence Manual* 588 (2d ed. 1986). Any further doubts about Chaplain Oberheide's expertise would be a matter affecting the weight of the evidence and not a basis for refusing its admission. *United States v. Mustafa,* 22 M.J. 165 (C.M.A.1986).

Despite the military judge's error in failing to admit the exhibit, we find no discernible prejudice under the facts of this case. Article 59(a), UCMJ, 10 U.S.C. § 859(a). The proffered exhibit expressed some of the same opinions as the other chaplains' letters, which were admitted. Further, this item of evidence was only one piece of an extensive mitigation and extenuation case showing appellant's outstanding record and the causes of his troubles.

### IV. SEVERITY OF THE SENTENCE

 The final error alleged by appellant is that his sentence is too severe. We will consider this assertion in determining sentence appropriateness after we reassess his sentence because of our setting aside some of appellant's findings of guilt.

To reassess appellant's sentence, we must be able to decide accurately what sentence would have been adjudged if appellant had only been convicted of the offenses left after we set aside the convictions of specification 2 and portions of specifications 1 and 3. *United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990).

We find that we can accurately make that determination in this case. The military judge had determined the maximum punishment to be confinement for 2 years, a dismissal from the service, total forfeitures, or a fine. In arriving at that conclusion, he considered specification 2 to be multiplicious with specification 1. He also treated specifications 1 and 3 as Article 133, UCMJ, offenses that were not analogous to offenses located elsewhere in the Manual for Courts–Martial. Therefore, our disapproval of specification 2 and por-

tions of specifications 1 and 3 does not affect the maximum punishment. Taking into consideration these circumstances and the evidence before the military judge at trial, we approve the sentence as reduced upon remand. After considering the entire record of trial and appellant's assertion that his sentence is too severe, we further find this reassessed sentence to be appropriate. Article 66(c), UCMJ, 10 U.S.C.A. § 866(c).

The findings, as modified, and the sentence, as reassessed, are determined to be correct in law and fact and are

AFFIRMED.

Judges RIVES and McLAUTHLIN concur.