**UNITED STATES, Appellant,**

**v.**

**Ronald H. KROOP, Lieutenant Colonel U.S. Air Force, Appellee.**

No. 67,937.
CMR No. 28424.

U.S. Court of Military Appeals.

Argued June 2, 1993.
Decided Sept. 30, 1993.

For the United States: *Colonel Jeffery T. Infelise* (argued); *Lieutenant Colonel Brenda J. Hollis* and *Captain David C. Wesley* (on brief); *Colonel Richard L. Purdon* and *Captain Jane M.E. Peterson.*

For the Accused: *Captain David D. Jividen* (argued); *Major Alice M. Kottmyer* and *Captain Michael D. Burt* (on brief); *Lieutenant Colonel Frank J. Spinner.*

*Opinion*

EVERETT, Senior Judge:

The Judge Advocate General certified this case to test whether the Air Force Court of Military Review erred in setting

aside parts of the findings entered by the military judge on Kroop's pleas of guilty to three specifications alleging unbecoming conduct, in violation of Article 133 Uniform Code of Military Justice, 10 USC § 933. *See* 34 MJ 628, 633–36 (1992). In light of the allegations in the three specifications, we hold that the Court of Military Review reached a correct result.

### A

Lieutenant Colonel Kroop, a married Air Force officer who commanded the base civil engineering squadron at Mountain Home Air Force Base, Idaho, became romantically involved with Staff Sergeant Rebecca Percy, who also was married but was not in Kroop's squadron or under his supervision. As his relationship with Percy was coming to an end, Kroop bestowed his affections on Second Lieutenant Stephanie Clements, who was a design engineer detailed to duties in Kroop's civil engineering squadron. Ultimately, those activities led to the preferral of a charge of conduct unbecoming an officer, which had these three specifications of misconduct alleging that Lieutenant Colonel Kroop

> 1: ... a married man, while in a position of command, did, ... wrongfully behave with undue familiarity, wrongfully engage in excessive social contacts, and wrongfully have sexual intercourse with [2Lt Clements], a married female, [and] a subordinate under [his] command....
>
> 2: ... [Kroop] while in a position of command, did, ... wrongfully make sexual advances and verbal comments of a sexual and intimate nature to [2Lt Clements], a married woman not his wife, a subordinate under [his] command, which conduct created an intimidating, hostile, and offensive environment....
>
> 3: ... [Kroop] a married man, did, ... wrongfully behave with undue familiarity, engage in excessive social contacts, and wrongfully have sexual intercourse with [SSgt Percy], an enlisted woman, ... not his wife....

Kroop pleaded guilty before a military judge sitting alone and entered into a detailed stipulation of fact. After questioning Kroop about the providence of his pleas and the stipulation of fact, the military judge found him guilty as charged and sentenced him to dismissal and a $5,000 fine. This sentence as adjudged was approved by the convening authority on March 11, 1990; but because that convening authority, a lieutenant general, was himself under investigation for similar acts of "predatory sexual misconduct," CMR unpub. op. at 4, 1991 WL 85323 (April 18, 1991), the Court of Military Review returned the record for a new staff judge advocate's recommendation and action by a different convening authority. The new convening authority approved the fine but not the dismissal on September 12, 1991.

Upon further review the Court of Military Review found improvident Kroop's plea of guilty to the language of the second specification concerning the creation of "an intimidating, hostile, and offensive environment," because during the providence inquiry, Kroop had never admitted that these allegations were accurate. Accordingly the conviction was set aside, and "in the interests of judicial economy" this specification was dismissed. 34 MJ at 635. The Judge Advocate General has not questioned this ruling.

The Court of Military Review also disapproved so much of the findings of guilty of specifications 1 and 3 as contained the "excessive social contacts" and "undue familiarity" language. 34 MJ at 634–35, 636. However, the court concluded that—despite the absence of a specific allegation that Clements was not Kroop's wife—the remaining language of specification 1 (34 MJ at 634) (and the language of specification 3 containing that allegation—34 MJ at 636) was each sufficient to allege adultery as a violation of Article 133. The sentence as previously reduced to a $5,000 fine by the substitute convening authority was considered by the court below to be appropriate for the two adultery convictions. 34 MJ at 638. A petition for reconsideration *en banc* was denied by the Court of Military

Review on March 6, 1992 with one judge dissenting and three not participating.

The Judge Advocate General of the Air Force certified the following issues for review:

### I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT RULED THAT THE "UNDUE FAMILIARITY" AND "EXCESSIVE SOCIAL CONTACTS" LANGUAGE OF SPECIFICATIONS 1 AND 3 OF THE CHARGE FAILED TO STATE AN OFFENSE.

### II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT APPLIED THE FRATERNIZATION ANALYSIS OF *U.S. V. JOHANNS* TO SPECIFICATIONS ALLEGING CONDUCT UNBECOMING AN OFFICER BY ENGAGING IN PUBLIC ACTS OF "UNDUE FAMILIARITY" AND "EXCESSIVE SOCIAL CONTACTS" WITH A SUBORDINATE OFFICER AND AN ENLISTED MEMBER.

### B

By the wording of the second certified question the Judge Advocate General has attempted to divert the Court from consideration of the sufficiency of the pleadings to consideration of sufficiency of the facts stated in the stipulation which accompanied the guilty pleas. For example, the second issue refers to "specifications alleging conduct unbecoming an officer by engaging in *public* acts of 'undue familiarity' and 'excessive social contacts.'" (Emphasis added.) Our examination of specifications 1 and 3—and even of specification 2 which the court below dismissed—reveals no allegation that any of Kroop's activity occurred in public.

We realize that, especially when there is a guilty plea, the fair intendment of a specification may be clear enough to remedy a technical omission. *See, e.g., United States v. Sell*, 3 USCMA 202, 11 CMR 202 (1953). Indeed, in this very case the Court of Military Review properly concluded that specification I was sufficient to allege adultery even though this specification only alleged that Kroop was married and failed specifically to assert that Lt. Clements was not his wife. 34 MJ at 634. However, we do not believe that the "public" nature of the sexual relationships with these two women can be inferred with similar ease from the allegations of specifications 1 and 3; or that the presence of the word "wrongfully" supplies the omissions. Likewise, even though the stipulation of fact which accompanied the guilty pleas makes clear that some of the "undue familiarity" and "excessive social contacts" was public, an accused's entering into a stipulation of facts or his making of testimonial admissions during a guilty-plea inquiry does not suffice to add new allegations to a specification.

With respect to the first certified question, it must be recalled that the Court of Military Review held that specifications 1 and 3 each stated an offense—namely, adultery. Thus, the language to which the certificate directs our attention was in some respects surplusage. If, however, there had been no allegations as to the marital status of Kroop, Clements, or Percy, what effect should be given allegations of "undue familiarity" and "excessive social contacts" in specifications 1 and 3? In the absence of further allegations as to the details of the conduct involved or the service custom violated, we are concerned about the imprecision of this language. It could be intended to allege mistreatment of subordinates of the type apparently contemplated by specification 2 but not established in the providence inquiry[1]; or it

---

1. Article 93, Uniform Code of Military Justice, 10 USC § 893, deals with certain types of mis-    treatment of subordinates.

could be directed towards some type of fraternization.

Although the certified issues do not make this clear, the sufficiency of specifications 1 and 3 to allege offenses other than adultery hinges on whether it is conduct unbecoming an officer for an officer to have sexual intercourse (a) with an enlisted member not alleged to be his subordinate or under his command (Staff Sergeant Percy) or (b) with a subordinate officer (Lt. Clements).

The Air Force Court of Military Review held in *United States v. Johanns*, 17 MJ 862 (1983), *aff'd* 20 MJ 155 (CMA), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147 88 L.Ed.2d 122 (1985), that no custom of that service forbade sexual intercourse between an officer and an enlisted person not under the officer's command or supervision. Moreover, in 1989 when the conduct which is the subject of this appeal occurred, no Air Force Regulation prohibited such conduct or even dealt specifically therewith. Accordingly, we conclude that, apart from adultery, specification 3 fails to allege a violation of Article 133.

With respect to private sexual intercourse between an officer and his or her superior, unaccompanied by any element of harassment or coercion on the part of the superior and any allegation of violation of an applicable custom or regulation, we are also unconvinced that Articles 133 or 134 is violated. Admittedly, such facts may very well justify a denial of promotion or even an administrative separation; but here we are discussing a criminal conviction and sentence. For example, if the superior officer were seduced into sexual intercourse by the subordinate officer, would that, of itself, constitute a crime in the Air Force? At least in the absence of an Air Force custom or regulation to the contrary—which has neither been alleged nor proved (and which we doubt exists)—we believe the answer must be in the negative.[2]

Thus, if the crime of adultery were disregarded, we believe that specifications 1 and 3 in their present form and without any additional allegations would inadequately allege a crime.

## C

The decision of the United States Air Force Court of Military Review is affirmed.

Judge WISS concurs.

Judge GIERKE dissents and will file an opinion at a later date. [*See* 38 MJ at 474.]

Judge CRAWFORD did not participate.

SULLIVAN, Chief Judge (concurring in part and in the result):

I agree with Senior Judge Everett that the challenged language excised from these specifications was mere surplusage. 38 MJ at 472. Thus, regardless of the correctness of the Court of Military Review's decision on this point, appellant was not prejudiced. Beyond that I need not comment.

COX, Judge (concurring in the result): *

I agree with almost everything Judge Gierke writes in his dissenting opinion. I do not, however, read the Court of Military Review as holding that a conduct-unbecoming charge can never be based on "unduly familiar" conduct or "excessive social contacts," as the lead opinion here apparently does. If the Court of Military Review had held, as a matter of law, that such conduct could not constitute an offense, I could not agree. However, I read the Court of Military Review as doubting that *this particular* conduct was of such a character as to rise to conduct unbecoming an officer.

Thus, the court below indicated:

This difficulty [defining "undue familiarity" or "excessive social contacts"] manifested itself during appellant's guilty

---

2. Of course, we exclude those situations where the pleaded and proven gravamen of the offense is to obtain some advantage, *e.g.,* bribery or blackmail.

* This opinion was circulated to the other judges on October 8, 1993, and the opinion filed on September 30, 1993, is withdrawn.

plea inquiry when the military judge tried to pin down appellant's conduct that was "unduly familiar" or constituted "excessive social contacts." There was no confusion about the wrongfulness of the sexual intercourse, but other contacts that constituted the offense were difficult to label as wrongful per se. Similarly, the stipulation of fact entered into by appellant and his counsel was understandably hazy about the "undue familiarity" and "excessive social contacts."

34 MJ 628, 634 (1992).

I attribute the action of the Court of Military Review as merely an exercise of its "awesome, plenary, *de novo* power of review" under Article 66, Uniform Code of Military Justice, 10 USC § 866, based upon the unique facts and circumstances of this case. *United States v. Cole*, 31 MJ 270, 272 (CMA 1990); *see also United States v. Parker*, 36 MJ 269, 271 (CMA 1993); *United States v. Claxton*, 32 MJ 159, 162 (CMA 1991). As such, I conclude that that court's action was within its discretionary jurisdiction. Thus, I agree with the rationale of Judge Gierke's dissent, but I concur with the result of the lead opinion.

GIERKE, Judge (dissenting):

I disagree with Senior Judge Everett's disposition of both certified issues.

The first certified question asks whether the Court of Military Review erred when it held that allegations of "undue familiarity" and "excessive social contacts" with a married female servicemember were insufficient to allege violations of Article 133, Uniform Code of Military Justice, 10 USC § 933. I would answer this question in the affirmative.

In *United States v. Sell*, 3 USCMA 202, 206, 11 CMR 202, 206 (1953), we established the standard for testing whether a specification alleges an offense, as follows:

The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and suf-ficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

In *United States v. Norvell*, 26 MJ 477, 480 (CMA 1988), then-Chief Judge Everett set out the standard for testing the sufficiency of a specification laid under Article 133 in a guilty-plea case: "If ... sufficient facts are pleaded that could reasonably be found to constitute conduct unbecoming an officer, the conviction will be upheld." He also noted: "Appellant's standing to challenge a specification on appeal after a voluntary plea of guilty is considerably less than if [he] had put the Government to its proof." *Id.* at 480 n. 2.

In this case, appellant did not ask for a bill of particulars or in any way assert that the specification was too vague. To the contrary, he knew precisely what was alleged, admitted it during the plea inquiry, and agreed to a detailed stipulation of fact in which he admitted that he knew that his conduct was wrong. The record, consisting of both the plea inquiry and the stipulation of fact, reflects in great detail what he was convicted of and protects him from further prosecution of virtually any accusation of misconduct with the officer and enlisted woman during the periods alleged. Furthermore, the allegations of "undue familiarity" and "excessive social contacts" with a married subordinate officer (specification 1) and an enlisted woman (specification 3) clearly pass the *Norvell* test in that they "could reasonably be found to constitute conduct unbecoming an officer," *i.e.*, conduct which, "in dishonoring or disgracing [appellant] personally, seriously compromise[d][his] standing as an officer." Para 59c(2), Part IV, Manual for Courts–Martial, United States, 1984. In my view there is no reason to disturb his guilty pleas to these offenses.

The second certified question asks whether the Court of Military Review erred in their application of the "analysis of"

*United States v. Johanns*, 17 MJ 862 (AFCMR 1983), *aff'd* 20 MJ 155 (CMA 1985), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). I would answer this question in the affirmative. In the first place, *Johanns* was a contested case; Kroop pleaded guilty. The *Johanns* requirement to *prove* the existence of a custom or regulation is not applicable to a guilty-plea case. Secondly, *Johanns* deals with sufficiency of proof; * the certified issue deals with sufficiency of pleading. The Court of Military Review missed the mark when it used the *Johanns* rules of proof to resolve an issue of pleading.

I also part company with the implication in the lead opinion that, because there was no custom prohibiting officer-enlisted romances in October 1981, the date of the offenses in *Johanns*, there was no such custom in August and September of 1989, the time period of Kroop's offenses. Such an implication defies logic.

I also disagree with the suggestion in the lead opinion that the lack of a custom in October 1981 could be remedied only by promulgating a regulation. Such a suggestion flies in the face of reality. Some rules of behavior are so fundamental that they need not be enshrined in a regulation. As Chief Judge Sullivan stated in *United States v. Frazier*, 34 MJ 194, 198–99 (CMA 1992):

[C]onduct of an officer which substantially denigrates the marital relationship of an enlisted subordinate or exhibits a fla-

grant disrespect for an enlisted man's family severely erodes confidence in command and, thus, unquestionably constitutes conduct unbecoming an officer.... Accordingly, we conclude that a reasonable military officer would have no doubt that the activities charged in this case constituted conduct unbecoming an officer.

(Citations and footnote omitted.) Chief Judge Sullivan's comment is equally applicable to appellant, a squadron commander who instigated a romantic relationship with a married subordinate officer.

The lead opinion affirms the Court of Military Review's holding that the allegation of adultery was sufficient to allege a violation of Article 133 but the allegations of "undue familiarity" and "excessive social contacts" associated with and leading to the adultery were not. In my opinion, this latter holding is wrong. As Chief Judge Sullivan said in *Frazier*, "Article 133 and its predecessors have never been so narrowly construed, and *related conduct by an officer which substantially undermines his leadership position is equally punishable under the above codal provision.*" 34 MJ at 198 (emphasis added).

I would answer both certified questions in the affirmative and reverse the decision of the United States Air Force Court of Military Review to the extent that it sets aside a portion of the findings of guilty regarding specifications 1 and 3 of the Charge.

---

* In affirming the decision of the Court of Military Review, our Court stated:

The court below apparently determined that no custom of that service prohibited Captain Johanns' private sexual relationships with several enlisted women. In the face of this determination by a tribunal which has factfind-

ing powers, it must be assumed that Johanns did not receive notice from an Air Force custom or long-established practice that his amorous activities might transgress Articles 133 and 134....

20 MJ 155, 160 (1985) (footnote omitted).