UNITED STATES, Appellee

v.

Christopher A. FELIX, Airman
U.S. Air Force, Appellant.

No. 93–0861.
CMR No. S28476.

U.S. Court of Military Appeals.

Argued April 19, 1994.

Decided Sept. 16, 1994.

For Appellant: *Colonel Jay L. Cohen* (argued); *Captain Robert I. Smith* (on brief); *Lieutenant Colonel Frank L. Spinner.*

For Appellee: *Colonel Jeffery T. Infelise* (argued); *Captain Jules D. Silberberg* (on brief); *Major Barnard N. Madsen.*

---

*Opinion of the Court*

COX, Judge:

In the case at bar we are asked to decide the providence of appellant's guilty pleas to two specifications of escaping from correctional custody, and whether the Court of Military Review erred in deciding to review that issue, *en banc.*[1] We first consider the issue of *en banc* review.

1. The granted issues are:

I

WHETHER THE PLEAS TO CHARGE II, BOTH SPECIFICATIONS, ARE IMPROVIDENT BECAUSE THE FACTS INDICATE THE RESTRAINT IMPOSED ON APPELLANT IN CORRECTIONAL CUSTODY WAS MORAL, NOT PHYSICAL.

II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW, A MAJORITY OF WHICH DISAGREED WITH THE ORIGINAL PANEL'S DECISION, ERRED BY DECIDING THE CASE AT BAR *EN BANC*, APPARENTLY UNDER THE GUISE THAT THE PROVIDENCY OF APPELLANT'S PLEAS WAS A "QUESTION OF EXCEPTIONAL IMPORTANCE" WITHIN THE MEANING OF RULE 17 OF THE COURTS OF MILITARY REVIEW RULES OF PRACTICE AND PROCEDURE.

Appellant was tried by special court-martial composed of officer members. Pursuant to his conditional pleas, he was convicted of failure to obey an order not to consume alcohol and of escaping from correctional custody (two specifications), in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 USC §§ 892 and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 5 months, and reduction to the lowest enlisted pay grade. The convening authority approved the sentence.

On appeal, appellant's case was originally heard by a panel of three Court of Military Review judges (Senior Judge Leonard and Judges James and Johnson), who agreed to set aside all findings of guilty. 36 MJ 903, 913 n. 11 (AFCMR 1993) (en banc) (James, J., concurring in part and dissenting in part). During "off-panel" circulation, a Court of Military Review judge who did not sit on the panel suggested en banc consideration of appellant's case, and a majority of the court agreed. *Id.* The en banc court heard appellant's case and produced four opinions.[2] The majority set aside the findings of guilty of failure to obey a lawful order not to consume alcohol; affirmed the remaining findings; and reassessed appellant's sentence to include a bad-conduct discharge, confinement for 4 months, and reduction to the lowest enlisted level. 36 MJ at 910–11.

Article 66(a), UCMJ, 10 USC § 866(a), provides that "[a]ny decision of a panel may be reconsidered by the court sitting as a whole in accordance with such rules" as are prescribed by the Judge Advocates General. Rule 17(a) of the Courts of Military Review Rules of Practice and Procedure sets guidelines for en banc proceedings:

A majority of the judges present for duty *may order that any appeal or other proceeding be considered or reconsidered,* except as indicated in section (c) below, by the Court sitting as a whole. Such consideration or reconsideration ordinarily will not be ordered except (1) when consideration by the full Court is necessary to secure or maintain uniformity of decision, or (2) when the proceedings involve a question of exceptional importance, or (3) when a sentence being reviewed pursuant to Article 66 extends to death.

22 MJ CXXXIII (emphasis added).

■ The first category of circumstances under which en banc review is usually appropriate is where it is necessary for uniformity. While en banc review is obviously helpful where panels have reached inconsistent results, it might also be deemed necessary by the courts where there is disagreement among the judges and a panel might reach a result that would make what is considered to be bad law or law contrary to the majority view. In either case, review by the court sitting as a whole is entirely appropriate.

---

**2.** The opinion of Judge James, with whom Senior Judge Leonard and Judge Johnson joined, concurring-in-part and dissenting-in-part, attacks the propriety of en banc reconsideration of appellant's case following a hearing before a three-judge panel. Judge James opined:

Rule 17 of the Courts of Military Review Rules of Practice and Procedure, 22 MJ CXXVII, CXXXIII, provides that such reconsideration "ordinarily will not be ordered except (1) when consideration by the full Court is necessary to secure or maintain uniformity of decision, or (2) when the proceedings involve a question of exceptional importance, or (3) when a sentence being reviewed ... extends to death." There was no conflict among decisions of different panels on any issue in this case, and the punishment obviously does not extend to death.

One might question whether such a subjective standard as "exceptional importance" is so devoid of discernible criteria as really to constitute *no* rule. Were that the case, such a judicial mugging as this one would be in violation of the statute's "in accordance with rules" clause. [Art. 66(a), Uniform Code of Military Justice, 10 USC § 866(a).] ....

The decision of the majority to reconsider this case *en banc* can be justified only on the basis that this is a case of exceptional importance, and it demonstrates that the standard in the rules is interpreted by this Court as broad enough to cover any situation where the majority disagrees with a panel's decision. The question of how to properly charge offenses against correctional custody meets no plausible standard of "exceptional importance." Surely this excursion into a seldom visited back alley of military justice is not what the Congress and the Judge Advocates General had in mind when they gave us permission to shoot our toes off....

36 MJ 903, 913 n. 11.

The second category where *en banc* consideration is warranted is where a question of "exceptional importance" is involved.[3] What is of exceptional importance is a question for the majority of the Court of Military Review to determine. Deciding whether defining a crime, preventing bad precedent, or preventing future inconsistencies is of exceptional importance is within the court's domain.

Additionally, we note that Rule 17 does not provide an exclusive list of appropriate circumstances for *en banc* review, but merely suggests when Courts of Military Review should probably review cases *en banc*. The term "ordinarily" precedes the list of circumstances where review seems appropriate, and again, defining what is ordinary, out of the ordinary, or exceptional, is within the province of the Court of Military Review. As we stated in *United States v. Flowers*, 26 MJ 463, 465 (CMA 1988), "[W]e are confident that the court is cognizant of its own rules and complies therewith." We will not disturb the court's decision to reconsider appellant's case *en banc*.

Next, we turn to the providence of appellant's guilty pleas. Appellant pleaded guilty to two specifications of escaping correctional custody, but on appeal, he challenges the providence of those pleas, claiming he was under moral, rather than physical, restraint. The offense of escaping from correctional custody is "the act of a person undergoing the punishment of correctional custody pursuant to Article 15, [UCMJ, 10 USC § 815,] who, before being set at liberty by proper authority, casts off any physical restraint imposed by the custodian or by the place or conditions of custody." Para. 70(c)(1), Part IV, Manual for Courts-Martial, United States, 1984. The elements of that offense are as follows:

(a) That the accused was placed in correctional custody by a person authorized to do so;

(b) That, while in such correctional custody, the accused was under physical restraint;

(c) That the accused freed himself or herself from the physical restraint of this correctional custody before being released therefrom by proper authority; and

(d) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 70(b)(1).

Appellant was put into correctional custody by his squadron commander, who was authorized to place him in custody [*see* Art. 15(b)(2)(H)(ii) ], and appellant knew he was not allowed to leave the correctional custody facility without the permission of a Correctional Custody Monitor, unless he was assigned to a work detail outside the facility. He admitted that on February 9, 1991, he "snuck out" of the facility without proper authorization and went to the Slots–of–Fun Casino, where he had a couple of beers before returning to the facility. He was the only one in correctional custody, "was bored," and "went out through the back door." Appellant stated there was "no security in that place whatsoever." He was gone approximately 3 1/2 to 4 hours. He left the facility again on February 13, 1991, without authorization. While the monitor was in his office, he went out through the back door to an apartment to place a phone call to his girlfriend; he returned to the facility after being gone about an hour.

The military judge explained the elements of the offense to appellant twice. Appellant said he understood the elements and said, specifically, that he was "under physical restraint" imposed by correctional custody. Following the providence inquiry, *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969), appellant reaffirmed his desire to plead guilty.

---

3. The issue as framed by appellant asks whether his case was one of "exceptional importance" warranting *en banc* reconsideration. The court's rationale for reviewing appellant's case *en banc* was never articulated, and we will not limit our discussion of reconsideration *en banc* to that on the basis of "exceptional importance."

Article 15 describes correctional custody as "the physical restraint of a person during duty or nonduty hours and may include extra duties, fatigue duties, or hard labor."[4] The Manual for Courts–Martial discusses two different offenses against correctional custody: escape from correctional custody and breach of correctional custody. Para. 70(b), Part IV.

■ Although the Manual describes two different ways to violate correctional custody, once a person has been placed in it, by definition there is only one form of correctional custody. "Correctional custody" itself equals physical restraint. If the conditions of a facility designated by the servicemember's commander as the "correctional custody" facility do not provide for physical restraint, then the facility is something other than a "correctional custody" facility. A servicemember ordered to such a facility simply is not in "correctional custody"; rather, he or she is "restricted."[5] The majority opinion of the Court of Military Review described it this way:

> [I]n the absence of evidence to the contrary, a correctee is under physical restraint whenever he or she has been committed to a designated correctional custody setting (a centralized base facility or designated area within a facility) under the supervision of a monitor, and with knowledge he or she is not to leave except under specified conditions.

36 MJ at 908.

■ In this case, appellant admitted to being in correctional custody. The Government, by virtue of appellant's admissions, stipulations of fact, and pleas of guilty, was relieved from proving this fact by actual testimony. In light of the clear and unambiguous response by the accused, we will not speculate as to the true condition of the

correctional custody facility at Nellis Air Force Base, Nevada. See United States v. Prater, 32 MJ 433 (CMA 1991); United States v. Harrison, 26 MJ 474 (CMA 1988).

■ Two other observations are called for in light of the distinction made in the Manual for Courts–Martial between "breaches" of and "escapes" from correctional custody. First, both offenses flow from the same fountainhead—the lawful imposition of Article 15 nonjudicial punishment. The lawful imposition of the punishment is no more or less than a lawful order of the commanding officer requiring a servicemember to perform a lawfully imposed duty. If a servicemember refuses to do that duty, the offense could be punished under Article 90, UCMJ, 10 USC § 890, as a willful disobedience offense. Thus, the Article 134 offenses are in reality redundant and most likely are there for sentencing considerations rather than to create new offenses under the rubric of general disorders. Why the President chose to treat breaches of correctional custody as less serious offenses (for to some they appear more serious than many other Article 90 offenses) than other disobedience cases escapes us, but there they are.

■ The second observation is that breaches of correctional custody and escapes are distinguishable only if the servicemember has been placed in correctional custody in the first instance. The question of whether a particular facility or situation constitutes "correctional custody" is a question of fact and, as stated earlier, there can be no correctional custody without physical restraint. Once that fact is established, the next question is whether the accused "escaped," or whether he had been lawfully freed of the physical restraints (for example, authorized to report for duty elsewhere during duty

---

4. The Court of Military Review noted:

The President defines correctional custody as "the physical restraint of a person during duty or nonduty hours, or both, imposed as a punishment under Article 15...." [P]aragraph 5(c)(4) [Part V, Manual for Courts–Martial, United States, 1984]. This definition is taken almost verbatim from the Senate Report explaining the 1962 amendment to Article 15. Prior to defining correctional custody, the Sen-

ate Armed Services Committee stated as follows: "The bill contains a form of physical restraint not authorized in existing law, and termed 'correctional custody.'" S.Rep.No. 1911, 87th Cong., 1st Sess. 7 (1962) (emphasis added).

36 · MJ at 906–07.

5. This is analogous to being "pregnant." Either one is or one isn't.

hours) and "breached" the custody by not returning thereto as duly required.

Notwithstanding these distinctions, in this case we are convinced appellant knowingly and voluntarily admitted guilt, gave up trial rights, and gave up defenses to the charges. *United States v. Penister*, 25 MJ 148, 153 (CMA 1987) (Cox, J., concurring). While arguably appellant's unsworn statement casts some doubt on the effectiveness of the physi-

cal restraints employed in this correctional custody facility, they do not render appellant's pleas improvident.[6] At no time did he dispute the fact that he was duly required to be in the "designated correctional custody setting."

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.

---

6. Article 45(a), Uniform Code of Military Justice, 10 USC § 845(a), states:

> If an accused after arraignment makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.

See RCM 910(h)(2), Manual, *supra*.