UNITED STATES, Appellee

v.

Ronnie D. BOYETT, Second Lieutenant
U.S. Air Force, Appellant.

No. 93–1453.
CMR No. 29345.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 9, 1994.

Decided June 12, 1995.

Certiorari Denied Oct. 10, 1995.

See 116 S.Ct. 308.

For Appellant: *Captain Marge A. Overly*
(argued); *Colonel Jay L. Cohen* and *Lieutenant Colonel Frank J. Spinner* (on brief).

For Appellee: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Thomas E. Schlegel* (on brief).

*Opinion*

CRAWFORD, Judge:

1. Appellant was convicted by a military judge sitting alone, in accordance with his guilty pleas, of violating Article 133, Uniform Code of Military Justice, 10 USC § 933, for conduct unbecoming an officer and a gentleman. Appellant was sentenced to a dismissal and partial forfeitures, but the convening authority approved the dismissal and reduced the forfeitures by half. Upon review, the en banc Court of Military Review[1] affirmed the findings and the approved sentence. 37 MJ 872 (1993). We granted review on the following issues:

I

WHETHER APPELLANT WAS DENIED DUE PROCESS OF LAW UNDER THE FIFTH AMENDMENT WHEN THE AIR FORCE COURT OF MILITARY REVIEW DETERMINED THAT HIS "GUILTY PLEA TO CONDUCT CLEARLY NOT RECOGNIZED AS CRIMINALLY PROSECUTABLE FRATERNIZATION UNDER THE HOLDING IN [*UNITED STATES v.*] *JOHANNS* [I], [17 MJ 862 (1983)] MAY STAND." [*UNITED STATES v. BOYETT*, 37 MJ 872, 874 (AFCMR 1993).]

II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW AND VIOLATED THE POLICY OF *STARE DECISIS* IN RULING THAT THE FINDINGS OF *JOHANNS* [I] ARE LIMITED TO THE FACTS OF THAT CASE.

I conclude that appellant was not denied due process of law and that the Court of Military Review did not violate the policy of *stare decisis* in finding that *Johanns I* was limited to its facts.

1. *See* 41 MJ 213, 229 n. * (1994).

FACTS

2. At trial, appellant moved to dismiss specification 5, charging that he had "engage[d] in an unprofessional close personal social relationship, including sexual intercourse," between May 15 and June 30, 1990, with an enlisted person who did not work for him. Appellant alleged that under *Johanns*, specification 5 did not allege criminal conduct. Denying the motion, the military judge maintained that specification 5 involved a factual rather than a legal issue.

3. During the providence inquiry, appellant acknowledged the Air Force custom proscribing intimate relations between enlisted personnel and officers. R. 49. He understood that such relations could be prosecutable.

4. Appellant admitted having sexual intercourse with Airman X on or about 12 occasions. Most of the contact took place off post at his residence. When asked whether others knew about the relationship, he replied that "people had ideas." It was stipulated that appellant told one noncommissioned officer that if someone saw his relationship, they would think he "played Airman [X] like a puppet." Thus, even though he did not have a supervisory relationship with her, he admitted people would think he was taking advantage of her. When asked whether he thought his "conduct was unbecoming," he replied, "I've been told." There was "some concern" that he was "too friendly with the airmen" in his squadron, and this led to discussion with the squadron commander.

5. As part of the providence inquiry, a stipulation of fact was admitted with the consent of appellant and his defense counsel. The stipulation detailed that, during his precommissioning in August 1989 through the Reserve Officers Training Corps, he learned that it was "against" the custom of the service for officers to date enlisted personnel.

6. When he arrived at his duty station on September 20, 1989, he was counseled by his squadron commander that officer-enlisted relationships were improper. In December

1989, apparently after a report to the squadron commander, the commander again talked to appellant and told him "that officers do get court-martialed for improper relations with enlisted personnel." The commander described a case in which a female officer from that base was court-martialed for engaging in sexual relations with an airman whom she supervised.

## WAIVER

7. We cannot dispose of Issues I and II by applying waiver or relying on the fact that appellant was charged under Article 133. Neither invoking the doctrine of waiver nor alleging the offense as conduct unbecoming under Article 133 avoids the granted issues. A guilty plea does not waive the defect of a specification that fails to state an offense. RCM 907(b)(1)(B), Manual for Courts–Martial, United States, 1984. Further, if appellant does not admit sufficient facts pursuant to *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969), and RCM 910(e), to make the pleas provident, the Court is required to set aside the conviction. *Id.*

## ARTICLES 133 and 134

8. Alleging an offense under Article 133 [2] rather than specifically alleging fraternization under Article 134 [3] does not alleviate the Government's burden of establishing a service custom against fraternization. Para. 59c(2), Part IV, Manual, *supra*, provides, concerning Article 133:

> Whenever the offense charged is the same as a specific offense set forth in this Manu-

al, the elements of proof are the same as those set forth in the paragraph which treats that specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman.

9. Thus, by electing to charge fraternization under Article 133 rather than Article 134, the Government must also prove the additional element that the act constitutes conduct unbecoming an officer and gentleman. It would not have been necessary to prove this additional element if the offense had been charged under Article 134 as fraternization.

## DUE PROCESS STANDARD

■■■ 10. Appellant alleges a violation of his due process rights because his conduct was not prosecutable and, thus, specification 5 was void for vagueness. Criminal conduct requires an act, generally by the defendant, *mens rea*, and appropriate notice that the act would be criminal. The notice may not be vague; otherwise, there is a possibility of discriminatory prosecution. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." *See, e.g., In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507–08, 92 L.Ed. 682 (1948) (right to reasonable notice of charges); *Powell v. Alabama*, 287 U.S. 45, 68, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932) (due process requires notice of essential elements). In *Parker v. Levy*, 417 U.S. 733, 752–53, 94 S.Ct. 2547, 2559–60, 41

---

**2.** The elements of a violation of Article 133, Uniform Code of Military Justice, 10 USC § 933, are as follows:

(1) That the accused did or omitted to do certain acts; and

(2) That, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.

Para. 59b, Part IV, Manual for Courts–Martial, United States, 1984.

**3.** The elements of fraternization charged under Article 134, UCMJ, 10 USC § 934, would be as follows:

(1) That the accused was a commissioned or warrant officer;

(2) That the accused fraternized on terms of military equality with one or more certain enlisted member(s) in a certain manner;

(3) That the accused then knew the person(s) to be (an) enlisted member(s);

(4) That such fraternization violated the custom of the accused's service that officers shall not fraternize with enlisted members on terms of military equality; and

(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 83b, Part IV, Manual, *supra*. This paragraph constitutes explicit notice to servicemembers that fraternization is an offense.

L.Ed.2d 439 (1974), the Supreme Court remarked that the Court of Military Appeals "has narrowed the very broad reach of the literal language of" Article 133, "and at the same time has supplied considerable specificity...." The Supreme Court recognized that there may still be "sizable areas of uncertainty as to the coverage of the articles." *Id.* at 754, 94 S.Ct. at 2560–61. The Supreme Court asserted that there may be a substantial range of criminal conduct and that

> [b]ecause of the factors differentiating military society from civilian society, we hold that the proper standard of review for a vagueness challenge to the articles of the Code is the standard which applies to criminal statutes regulating economic affairs....

*Id.* at 756, 94 S.Ct. at 2562.

11. The Court continued:

> Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged.

*Id.* at 757, 94 S.Ct. at 2562, *quoting United States v. National Dairy Products Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963) (citations omitted). *See also United States v. Dear,* 40 MJ 196 (CMA 1994); *United States v. Norvell,* 26 MJ 477, 480 (CMA 1988).

12. Appellant alleges that *Johanns II* (20 MJ 155 (CMA), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985)) undercuts the notice requirement. But *Johanns II* does not have the sweeping impact that appellant alleges.

13. In *Johanns I,* a majority of the Air Force Court of Military Review found that

> as a matter of fact and law the custom of the Air Force against fraternization has been so eroded as to make *criminal prosecution* against an officer for engaging in mutually voluntary, private, non-deviate sexual intercourse with an enlisted member, neither under his command nor supervision, unavailable.

17 MJ at 869.

14. In reaching its conclusion in *Johanns I,* the Court of Military Review began with a historical review of the offense of fraternization. It traced the Air Force history as a part of the United States Army and referred to Air Force standards published in a booklet in 1977. The Court in *Johanns I* noted that, in this booklet, the Air Force did not even discuss fraternization, while indicating that "close personal friendships ... must not interfere with judgment or duty performance." *Id.* at 865–66. It then reviewed the 1970s directive concerning on-post quarters, open mess regulations, and encouragement "to patronize each others clubs as guests." *Id.* at 866.

15. The above-stated conclusion of "fact and law" is in effect a finding of fact with a legal conclusion completely dependent on three isolated functional areas: housing, messing, and working environs, while disregarding the historical development behind fraternization. *Id.* at 865–66. *See, e.g.,* Carter, Fraternization, 113 Mil. L.Rev. 61 (1986). The rationale behind class structures did not change. Thus, there is no reason to overrule *Johanns II,* after recognizing that there was a factual finding upon which the decision was based. Indeed Chief Judge Everett said in *Johanns II*:

> The court below [*Johanns I*] apparently determined that no custom of that service prohibited Captain Johanns' private sexual relationships with several enlisted women. In the face of this determination by a tribunal which has factfinding powers, it must be assumed that Johanns did not receive notice from an Air Force custom or long-established practice that his amorous activities might transgress Articles 133 and 134....

20 MJ at 160 (footnote omitted).

16. Even in *United States v. Appel,* 31 MJ 314, 319 (CMA 1990), Chief Judge Everett indicated that the issue concerning fraternization by Appel was whether the accused had "fair notice." While "a custom is not a subject for judicial notice," *id.* at 320, it is appropriate to take judicial notice of service

regulations, *United States v. Williams*, 3 MJ 155 (CMA 1977). *See also United States v. Mead*, 16 MJ 270 (CMA 1983).

17. Under the *Levy* standard, there is sufficient information in this record to conclude that there was adequate notice to appellant of his potential criminality. His pre-commissioning education emphasized that there was a custom against officers "dating" enlisted persons regardless of a supervisory relationship. This was fortified when he was counseled twice by his squadron commander about potential disciplinary action for such activity.

18. While we are not required to do so, even applying the recent standard enunciated in *Posters 'N' Things, Ltd. v. United States*, —— U.S. ——, ——, 114 S.Ct. 1747, 1754, 128 L.Ed.2d 539 (1994), one can conclude that "ordinary people can understand what conduct is prohibited." *See also Staples v. United States*, —— U.S. ——, ——, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994) (criminal prohibition not vague if individual can "choose between good and evil"), *citing Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952).

### Stare decisis

■■■ Appellant alleges that the Court of Military Review in this case violated the policy of *stare decisis* in overruling *Johanns I*.

19. *Stare decisis* is important for stability. *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). The doctrine also fosters public confidence in the judicial system and strengthens reliance

upon the judicial branch of the government. *Id.* This reliance is even more important in cases involved with economic questions. *See, e.g., Swift & Co. v. Wickham*, 382 U.S. 111, 133–35, 86 S.Ct. 258, 270–71, 15 L.Ed.2d 194 (1965) (Douglas, J., dissenting); B. Cardozo, *The Nature of the Judicial Process* 149 (1921); H. Hart, *The Concept of Law* 156 (1961). The doctrine is not simply based upon nostalgia but is meant to strengthen our judicial system. Under the doctrine of *stare decisis* a decision should not be overruled without examining intervening events, reasonable expectations of servicemembers, and the risk of undermining public confidence in the law. *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Ass'n*, 450 U.S. 147, 151–55, 101 S.Ct. 1032, 1035–37, 67 L.Ed.2d 132 (1981) (Stevens, J., concurring).

■■■ 20. But the doctrine does not apply when a statute,[4] executive order,[5] or other basis[6] for a decision changes. In this instance, the Court of Military Review found that the factual basis for the decision in *Johanns I* had changed. Thus, in this case, the decision below is consistent with the doctrine of *stare decisis*.[7]

21. Because the court below implicitly overrules *Johanns I*, we will examine the intervening events, reasonable expectations of servicemembers, and the risk of undermining public confidence in the law.

22. Before we examine intervening events following *Johanns I*, we will look at the historical development of the proscription against fraternization in the armed forces. The proscription against improper relationships between servicemembers of different

**4.** Amendment to Article 2, UCMJ, 10 USC § 802, was designed to legislatively overrule *United States v. Russo*, 1 MJ 134 (CMA 1975), and *United States v. Catlow*, 23 USCMA 142, 48 CMR 758 (1974). *See* S.Rep. No. 197, 96th Cong., 1st Sess. 121–23 (1979), *reprinted in* 1979 U.S.Code Cong. & Admin. News 1826–28. *See also United States v. Clardy*, 13 MJ 308 (CMA 1982).

**5.** *United States v. Kossman*, 38 MJ 258 (CMA 1993), overruled *United States v. Burton*, 21 USCMA 112, 44 CMR 166 (1971).

**6.** *United States v. Johnston*, 41 MJ 13 (CMA 1994), overruled *United States v. Arguello*, 29 MJ

198 (CMA 1989). *United States v. Teters*, 37 MJ 370 (CMA 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994), overruled *United States v. Baker*, 14 MJ 361 (CMA 1983).

The denial of eight petitions for reconsideration left a number of decisions without precedential effect. *See, e.g., United States v. Davis*, 9 MJ 254–64 (CMA 1980).

**7.** The decision by the court below, as with most decisions, have their bases in the Constitution, Uniform Code, Manual for Courts–Martial, and case law. Because of these bases, a higher court, such as this Court, may review decisions of a court below.

ranks, now commonly referred to as fraternization, descended from the Roman ranks.[8] Military organizations are made up of people who carry out various missions. These individuals must respect and trust one another. Actual or apparent partiality, preferential treatment, or improper use of rank prejudices good order, discipline, and high unit morale. This was recognized in *Johanns I*:

> Anyone who believes that a leader can mechanically assign a "friend" to unpopular or hazardous duty is unrealistic. Axiomatically, the troops will be highly aware of the duties assigned to an enlisted person(s) with whom an officer habitually associates or consorts. That is the prejudice to good order and discipline which the line between ranks is meant to prevent; and an officer and a gentleman will endeavor to keep oneself [sic] on the appropriate side of that line.

17 MJ at 872 (Snyder, J., concurring in part and dissenting in part).

23. In his concurring opinion in this case Judge James points out that what individuals do within "technical functional 'communities'" does not undermine the relationship that must exist between officers and enlisted members. 37 MJ at 881.

24. *Intervening Events.* Following *Johanns I* there have been significant changes in the structure and organization of the armed forces which serve to reinforce the historical proscription against improper relationships between servicemembers of different ranks. The emphasis today is toward jointness: joint commands, joint task forces, and uniformity as to the treatment of relationships among servicemembers not only of different ranks but also of different branches of the armed forces. Indicative of the emphasis on jointness is the enhanced position of the Chairman of the Joint Chiefs of Staff—10 USC §§ 151 and 153 (1986). All of these factors are significant intervening events since *Johanns I*.

25. Additionally, the old Air Force regulation concerning professional relationships indicated relationships between Air Force members were "normally matters of individual judgment." Para. 7c, Air Force Regulation (AFR) 30–1, Professional Relationships at 20 (4 May 1983). However, paragraph 2a, AFR 35–62, Policy on Fraternization and Professional Relationships (16 Apr. 1990), is much more stringent.

26. *Reasonable expectations.* As demonstrated by the fact in this case and in a number of cases that have distinguished *Johanns I*, overruling it does not undermine the expectations of servicemembers even in the Air Force. The administration by a service of published opinions, policy proclamations, and regulations, as well as training, has an impact on the expectations of servicemembers. As Judge James asserted, the "published opinions of The Judge Advocate General [of the Air Force] suggest the vitality ... of the general custom against fraternization" in the Air Force. 37 MJ at 880 n. 12. As was demonstrated in this case, appellant was well aware of what behavior would constitute improper relationships among the ranks.

27. *Public confidence in the law.* Foremost, public confidence in the law would be undermined if national security was jeopardized as a result of improper relationships. Again as Judge James stated:

> Fraternization remains an issue because it bears on leadership, discipline, and command. We are a community mainly of good soldiers who do not conduct themselves such that leadership, discipline, and command are impaired. Our views of our service are reflected in our views on what is and is not acceptable behavior. The *Johanns [I]* majority, however, looked simplistically to erosion of caste distinctions and diagnosed the end of the custom prematurely, after only a superficial examination.

37 MJ at 880–81.

28. Overruling *Johanns I* strengthens prior cases as to the responsibility of a mili-

---

8. B. Ayala, *Three Books on the Law of War and on the Duties Connected with War and on Military Discipline* (Book The Third) 175, 180 (J. Bate trans.) (Reprinted 1964) (Roman law recognized that undue familiarity would have an adverse effect on discipline). *See also* W. Winthrop, *Military Law and Precedents* 716 (2d ed. 1920 Reprint).

tary officer and is consistent with the historical development of fraternization as well as with intervening developments. We noted in *United States v. Frazier*, 34 MJ 194, 198 (CMA 1992), "that one critically important responsibility of a military officer is to inspire the trust and respect of the enlisted soldiers who must obey his orders and follow his leadership." *See also United States v. Hartwig*, 39 MJ 125 (CMA 1994); *United States v. Maderia*, 38 MJ 494 (CMA 1994); *United States v. Moore*, 38 MJ 490 (CMA 1994).

The decision of the United States Air Force Court of Military Review is affirmed.

COX, Judge (concurring):

29. The lead opinion reflects the views that I have long held, *see United States v. Johanns*, 20 MJ 155, 161 (CMA) (Cox, J., concurring in part, concurring in the result in part), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985); *United States v. Wales*, 31 MJ 301, 310 (CMA 1990) (Cox, J., dissenting in part and concurring in the result), and I fully concur. Naturally, any conduct charged as a violation of Article 133 or 134, Uniform Code of Military Justice, 10 USC § 933 or 934, respectively, must be such that an accused servicemember is fairly on notice of its proscription. *Parker v. Levy*, 417 U.S. 733, 752–54, 94 S.Ct. 2547, 2559–61, 41 L.Ed.2d 439 (1974).

30. Regarding "fraternization," whether charged as a violation of Article 133 or 134, I take it that paragraph 83 ("Fraternization"), Part IV, Manual for Courts–Martial, United States, 1984, constitutes rather explicit notice to servicemembers. I have never agreed with those who would argue that the Service Secretaries need to promulgate some special regulation in order for fraternization to become chargeable as an offense. We might recall that the Manual for Courts–Martial is an Executive Order promulgated by the Commander in Chief, an authority superior to the Service Secretaries. Persons arguing against the wisdom of outlawing fraternization in the services should address their appeals there.

31. In my view, the only thing left to debate in a given case is whether the particular conduct is prejudicial to good order and discipline and, thus, constitutes fraternization or conduct unbecoming an officer by fraternizing. I take it that even the most ardent advocates concede that sexual intercourse by a superior officer with a subordinate servicemember takes it over the line of "equality," the *sine qua non* of fraternization (or "sororitization" as the case may be).

SULLIVAN, Chief Judge, with whom WISS, Judge, joins (concurring in the result):

32. This appeal from a conviction based on a guilty plea raises two particular questions for me. First, was appellant's actions as charged and admitted "conduct unbecoming an officer," in violation of Article 133, Uniform Code of Military Justice, 10 USC § 933? *See Parker v. Levy*, 417 U.S. 733, 752–55, 94 S.Ct. 2547, 2559–61, 41 L.Ed.2d 439 (1974). Second, if his actions were conduct unbecoming an officer, did appellant have "fair notice" that his actions would constitute this criminal offense? *Id.* at 755–57, 94 S.Ct. at 2561–62. I do not accept the lead opinion's assumption that fraternization was impliedly charged in this case or its suggestion that appellant's case can be resolved solely on the basis of paragraph 83b(4), Part IV, Manual for Courts–Martial, United States, 1984.[1]

---

**1.** In 1984, the President promulgated the Manual for Courts–Martial, United States, and delineated "fraternization" as a crime under Article 134, Uniform Code of Military Justice, 10 USC § 934. He further provided that the Government must prove as a matter of fact that "such fraternization violated the custom of the accused's service that officers shall not fraternize with enlisted members on terms of military equality." Para. 83b(4), Manual for Courts–Martial, United States, 1984. In *United States v. Fox*, 34 MJ 99, 102–03 (1992), this Court held that it was a question of fact whether an accused's particular service prohibited certain conduct as unlawful fraternization as a matter of custom. Accordingly, the lead opinion's finding of criminality and adequate constructive notice on the basis of paragraph 83 alone is in my view plainly erroneous. *See generally Parker v. Levy*, 417 U.S. 733, 755–57, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974).

33. Assuming appellant was found guilty of fraternization, I would join Judges Gierke and Wiss in affirming appellant's conviction solely on the basis of his guilty-plea responses. In particular, I disagree with the lead opinion's suggestion that the Air Force Court of Military Review in this case (37 MJ 872, 877–78 (1993)) overruled its own prior decision in *United States v. Johanns*, 17 MJ 862 (1983), on the scope of criminal fraternization in the Air Force. Moreover, I strongly object to the United States Court of Appeals for the Armed Forces reviewing the lower court's purported failure to apply the doctrine of *stare decisis* to its own decision. *See United States v. Johanns*, 20 MJ 155(CMA), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). Finally, if the Air Force Court of Military Review overruled *United States v. Johanns*, 17 MJ 862, in this case as suggested by the lead opinion, it cannot avoid considering the Supreme Court decision in *Marks v. United States*, 430 U.S. 188, 196, 97 S.Ct. 990, 995, 51 L.Ed.2d 260 (1977) (due process violation to prosecute for criminal conduct not criminalized at time of offense but later criminalized by subsequent expansive judicial decision).[2]

34. The issues raised in this case set the legal snare which has caused the lead opinion to stumble. They state:

### I

WHETHER APPELLANT WAS DENIED DUE PROCESS OF LAW UNDER THE FIFTH AMENDMENT WHEN THE AIR FORCE COURT OF MILITARY REVIEW DETERMINED THAT HIS "GUILTY PLEA TO CONDUCT CLEARLY NOT RECOGNIZED AS CRIMINALLY PROSECUTABLE FRATERNIZATION UNDER THE HOLDING IN *JOHANNS*[1] MAY STAND." [2]

**2.** Unlike the lead opinion, I need not address appellant's argument under *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), because I conclude the portion of *United States v. Johanns*, 17 MJ 862 (AFCMR 1983), on the scope of Article 133, UCMJ, 10

### II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW AND VIOLATED THE POLICY OF *STARE DECISIS* IN RULING THAT THE FINDINGS OF *JOHANNS* ARE LIMITED TO THE FACTS OF THAT CASE.

***

1. *United States v. Johanns*, 17 MJ 862 (AFCMR 1983)

2. *United States v. Boyett*, 37 MJ 872, 874 (AFCMR 1993).

35. Quite candidly, the phrasing of these issues is rather presumptuous. The first issue assumes that the portion of the decision of the Air Force Court of Military Review in *United States v. Johanns*, 17 MJ 862, concerning the scope of Article 133 survived the decision of this Court in *United States v. Johanns*, 20 MJ 155. I do not share this view. *United States v. Kroop*, 38 MJ 470, 473 (CMA 1993) (Sullivan, C.J., concurring in part and in the result); *United States v. Wales*, 31 MJ 301, 310 (CMA 1990) (Sullivan, J., concurring in part and in the result); *United States v. Appel*, 31 MJ 314, 322 (CMA 1990) (Sullivan, J., concurring in part and in the result). Assuming it did survive our decision in *United States v. Johanns*, 20 MJ 155, the second granted issue further assumes that it is this Court's role to enforce the doctrine of *stare decisis* in a lower court and ensure that the court below follows its own decisions. No authority is proffered for this novel use of the doctrine of *stare decisis* and I do not believe such a question should be entertained by this Court. *See United States v. Felix*, 40 MJ 356, 359 (CMA 1994). *Cf. Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1122–24 (7th Cir. 1987) (District court decision that it was required to follow a different district court's decision because of doctrine of *stare decisis* found erroneous by a court of appeals.)

USC § 933, was implicitly overruled by the decision of this Court in *United States v. Johanns*, 20 MJ 155 (CMA), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). This took place long before the occurrence of appellant's conduct in 1990.

## I

### TRIAL MOTION

36. Appellant was charged with conduct unbecoming an officer, in violation of Article 133. The specification of this Charge does not expressly allege fraternization but instead states:

Specification 5: In that [appellant] did, at or near Great Falls, Montana, on divers occasions between on or about 15 May 1990 and on or about 30 June 1990, wrongfully, dishonorably, and disgracefully engage in an unprofessional close personal social relationship, including sexual intercourse, with Airman [MRB], an enlisted person.

37. Prior to entering a plea to this charge, appellant made a motion to dismiss this charge "for failure to state an offense." He submitted a written motion which characterized this offense as "fraternization" and asserted:

There is no crime here. Officers engaging in mutually voluntary, private, nondeviate sexual intercourse with enlisted members, neither under their command nor supervision, are not violating the article prohibiting conduct unbecoming an officer or the article prohibiting conduct prejudicial to good order and discipline. *US v. Johanns,* 20 MJ 155 (CMA 1985). Further, "if the Air Force elects to prosecute and punish private sexual intercourse between an officer and an enlisted person not under his command or supervision, then ... it *must promulgate specific punitive regulations forbidding the unwanted conduct* (emphasis added)." *US v. Wales,* 31 MJ 301 at 307 (CMA 1990). The Air Force issued AFR 35–62, entitled "Policy on Fraternization and Professional Relationships," but this is not a punitive regulation. *See Wales, supra* and AFR 35–62.

38. The Government objected to characterization of appellant's offense as "fraternization" and insisted that appellant was lawfully charged with "conduct unbecoming an officer." The military judge initially declined to rule on this motion until evidence was presented to him as to whether a custom existed in the Air Force prohibiting such conduct between an unmarried officer and an enlisted person. Appellant again insisted that, as a matter of law, he could not be prosecuted for the charged offense unless a service regulation had been promulgated prohibiting it. He relied on the decisions of the United States Court of Military Appeals in *United States v. Wales,* 31 MJ at 307, and *United States v. Johanns,* 20 MJ 155. The military judge implicitly rejected the characterization of this offense as fraternization and the argument that a punitive regulation was required to punish the charged conduct.

39. The record of trial on this matter states:

MJ: Captain Peterson [defense counsel], you have a motion before me to have this specification dismissed, as it fails to state an offense. What do you want to do?

DC: Well, Sir, the defense's position is that it's not a factual issue, that it's a legal issue under the case law, and that you can make a ruling based on the law as it stands under *Johanns, Wales,* and *[U.S. v.] Arthen* [32 MJ 541 (AFCMR 1990) ]. The case law says there must be a punitive regulation and there is no punitive regulation.

We understand that you said you think it's a factual issue, and the Government has asked for you to defer ruling and we are ready to enter pleas in the case and proceed.

MJ: Okay. Notice can be shown either by punitive regulation or by a custom of the service.

DC: Yes, Sir.

MJ: We agree that there's no punitive regulation, but what I've done is given trial counsel the opportunity to provide the evidence if there is some custom of the service which makes the misconduct criminal and that your client was on notice of it.

DC: Yes, Sir.

MJ: Now, we can go to pleas. If he pleads not guilty to that specification, then I can certainly make that determination when I make the determination

on the factual issue. I can do them all at the same time; rule on the motion and on the factual issue of guilt and innocence at the same time.

DC: Yes, Sir.

MJ: If your client's going to plead guilty to that, then ...

DC: Yes, Sir, I understand.

MJ: ... you know, his *Care* Inquiry may be interesting.

DC: Yes, Sir, and we are probably facing an interesting *Care* Inquiry, Sir.

MJ: Okay. Fine. So, you are willing to have me defer ruling on the motion?

DC: Yes, Sir.

MJ: Are you prepared to enter pleas?

DC: Yes, Sir.

MJ: Go ahead.

DC: Lieutenant Boyett pleads to specifications 2, 3, 4, and 5 of the Charge and the Charge, guilty.

MJ: Your client then is pleading guilty to the specification which is in issue, specification 5?

DC: Yes, sir.

## II

## SCOPE OF ARTICLE 133 OF THE CODE

40. The first question I must address is whether the military judge and the Court of Military Review erred in failing to grant appellant's motion based on our decisions which purportedly established a punitive-regulation requirement for prosecution of fraternization under Article 133. Admittedly, this was one of the holdings of the Air Force Court of Military Review in its decision in *United States v. Johanns*, 17 MJ at 869 n. 21 with respect to the criminal offense of fraternization. Moreover, this Court long ago suggested such an approach to prosecuting fraternization under Article 133 should be followed. *See United States v. Pitasi*, 20 USC-MA 601, 44 CMR 31 (1971).

41. Of course appellant in this case was not expressly charged with fraternization or association "on terms of military equality" with enlisted persons. *See* para. 83b(2) and f, Part IV, Manual, *supra.* In any event, this Court did not affirm that portion of the opinion of the Air Force Court of Military Review in *United States v. Johanns*, 17 MJ at 869 n. 21, which required a punitive regulation for the prosecution of fraternization. *See United States v. Johanns*, 20 MJ 155. Finally, this view of the scope of Article 133 has not commanded a majority of this Court in any of our subsequent cases. *See United States v. Kroop*, 38 MJ 470; *United States v. Appel*, 31 MJ 314; *United States v. Wales*, 31 MJ 301. Accordingly, the military judge and the Court of Military Review did not err in upholding the refusal to grant appellant's motion to dismiss on the basis that no service regulation prohibited fraternization.

42. The next question I must address is whether the military judge and the Court of Military Review erred in holding that violation of a service custom may serve as a basis for prosecution of appellant's conduct of unbecoming an officer under Article 133. The Supreme Court in *Parker v. Levy, supra,* clearly indicated that conduct in violation of a custom was within the scope of Article 133; however, it also indicated such a custom was not the sole means of establishing whether an Article 133 violation occurred. In fact, in *Parker v. Levy, supra,* the conduct was found to be a violation of Article 133 because it breached a provision of the Manual for Courts–Martial explaining conduct violative of that article. The Supreme Court also noted that conduct found to be unbecoming an officer by decisions of the Court of Military Appeals and other "*authoritative* military sources" would further narrow the scope of the statute. 417 U.S. at 754, 94 S.Ct. at 2561 (emphasis added). Accordingly, I conclude that the military judge and the Court of Military Review did not err in ruling that conduct in breach of a service custom may be prosecuted under Article 133. *See also* para. 83b(4), Part IV, Manual, *supra.*

43. A third question I will address is whether the military judge and the Court of Military Review correctly held that appellant's conduct fell within the lawful scope of Article 133. *See Parker v. Levy, supra.* To resolve this question, I first must note the specifics of that conduct and the circum-

stances which appellant admitted in his guilty plea responses surrounded it. He, as an officer, was charged with "engag[ing] in an unprofessional close personal social relationship ... with an enlisted" woman. The circumstances shown to be "dishonorabl[e] and disgraceful" were that both were stationed at the same base but assigned to different units; the relationship was subsequently disclosed to another enlisted person; appellant appeared to be sexually exploiting the enlisted woman; and appellant knew this conduct violated a custom of the Air Force.

44. Clearly, this was not the non-exacerbated fraternization situation presented in *United States v. Johanns,* 17 MJ at 868. In that case there was no suggestion of sexual exploitation of an enlisted person or military awareness of this destructive relationship or any concession that a custom of the service prohibited such conduct by an officer. Regardless whether this conduct should properly be considered fraternization, it squarely falls within the authoritative military law precedents prohibiting sexually demeaning conduct by an officer. These numerous precedents were cited by one of the dissenting judges in *United States v. Johanns, supra* at 884–85 n. 15.

45. Judge Miller, a partially dissenting judge in the decision of the court in *United States v. Johanns,* 17 MJ at 882–83, made this point in his separate opinion in that case:

> The sole question before us for decision is whether the factually detailed misconduct alleged within the instant Article 133 specifications, under the circumstances of this case, is immediately recognizable by a reasonably prudent officer as an example of conduct that would subject him to potential prosecution for conduct unbecoming an officer and a gentleman.
>
> Unfortunately, by limiting their discussions of the history of "fraternization type cases" to those few cases which actually contained the term "fraternize" or "fraternization," my fellow judges also overlooked some exceptionally useful and exceptionally relevant generalizations pertinent to the resolution of this quintessential question. Had they expanded their research so as to

encompass those cases which, although not mentioning the term "fraternization," nevertheless, dealt with specific allegation of officer/enlisted misconduct alleged to have violated one of the general articles, they would have been able to glean four distinct categories of officer/enlisted behavior recognized time and again by our appellate courts as violating the proper criteria of Article 133 and 134 offenses. Even more importantly, they might have recognized that the behavior alleged, here, falls distinctly within the fourth of these actionable categories, *demeaning sexual behavior.*

(Footnote omitted; emphasis added.)

46. I agree and would hold that appellant's conduct under the circumstances of this case demeaned him as an officer and undermined his ability to lead. *See also United States v. Frazier,* 34 MJ 194, 198 (CMA 1992) (and cases cited therein). I further agree with Judge Miller that ample military legal precedent (17 MJ at 882 n. 15) existed which delineated it as conduct unbecoming an officer, in violation of Article 133. *See United States v. Boyett,* 37 MJ at 880 n. 12 (James, J., concurring). Finally, I agree with the Court of Military Review that, if appellant's conduct constituted fraternization, then his guilty-plea responses also established that his conduct violated a service custom as delineated in *Parker v. Levy,* 417 U.S. at 752–55, 94 S.Ct. at 2559–61, and paragraphs 83b(4) and 59c(2), Part IV, Manual, *supra.* Appellant admitted there was a custom in the Air Force prohibiting fraternization between an officer and an enlisted person, including sexual intercourse.

### III

### FAIR NOTICE THAT CONDUCT VIOLATED ARTICLE 133

47. The second issue in this case is whether appellant was provided fair notice that his conduct was a crime under Article 133. Clearly, *Parker v. Levy, supra* at 755–57, 94 S.Ct. at 2561–62, provides that at least constructive notice of the criminality of a servicemember's conduct is required by the

Due Process Clause of the Fifth Amendment. Such notice can be shown by proof of an authoritative court decision including such conduct as punishable under Article 133; a provision of the Manual for Courts–Martial explaining conduct as a violation of Article 133; or a custom of the service prohibiting such conduct or any other circumstance which would establish that a servicemember would have no reasonable doubt that his conduct was unbecoming an officer. *Id.* In *United States v. Johanns,* 20 MJ at 161, this Court simply held that Captain Johanns in 1982 did not have adequate notice from any of the above sources or anywhere else that his conduct was proscribed under Article 133.

48. More particularly, this Court in *United States v. Johanns,* 20 MJ at 161, held that Captain Johanns was denied due process of law under the Fifth Amendment when he was convicted of conduct unbecoming an officer by fraternizing with 3 different enlisted women. One of the dismissed specifications specifically alleged that appellant shared a bed with the enlisted woman; the other two specifically alleged acts of sexual intercourse with the enlisted women. *See United States v. Johanns,* 17 MJ at 863–64 n. 1. This Court affirmed the lower court's dismissal of these specifications for the following reason:

> With respect to the case at bar, it appears that Captain Johanns *lacked the notice from custom or otherwise* which, even under the relaxed standard of review established by *Parker v. Levy, supra,* is constitutionally necessary to meet the due process requirements of the Fifth Amendment. Therefore, the Court of Military Review properly dismissed specification 2, 3, and 4 of Charge I; and the two certified questions must be answered in the affirmative. Because of multiplicity, Charge II and its specification must also be dismissed. *United States v. Rodriquez,* 18 MJ 363 (CMA 1984)

20 MJ at 161 (emphasis added).

49. I do not read *United States v. Johanns,* 20 MJ at 161, as holding that an officer in the Air Force could never, as a matter of law, have adequate notice that his sexual relationship with an enlisted woman

violated Article 133. Indeed, such an idea is preposterous in view of the 10–year time period involved and the myriad of circumstances in which such a sexual relationship could occur. In addition, I note that appellant at his trial did not expressly argue that he was denied fair notice of the criminality of his conduct but instead exclusively relied on his required-punitive-regulation theory. Finally, as part of his guilty plea responses, appellant openly conceded that his conduct violated a custom of the Air Force, that he knew that it violated that custom, and that he knew that such conduct was unbecoming an officer. I agree with the Court of Military Review that this due process issue is resolved in appellant's case by his own words admitting constructive and actual notice. *Cf. United States v. Fox,* 34 MJ 99, 103–04 (CMA 1992) (contested trial where inadequate instruction given on factual question of custom).

50. In sum, for the above reasons, I find appellant's conduct violated Article 133 of the Code. Therefore, I vote to affirm the decision below holding his guilty pleas to this offense to be provident.

GIERKE, Judge, with whom WISS, Judge, joins (concurring in the result):

51. I join the majority in answering Issue I in the negative. Appellant was not denied due process. The specification gave him adequate notice of the offense charged, and he admitted actual knowledge of a custom against fraternization and admitted that his conduct violated that custom.

52. Issue I involves two distinct aspects of notice: (1) notice based on the language of the pleadings, and (2) notice based on the language of the statute. Appellant does not challenge the sufficiency of the pleadings. *See United States v. Norvell,* 26 MJ 477 (CMA 1988). Instead, he argues that he "did not possess adequate notice that his conduct constituted criminal behavior." Final Brief at 6.

53. Regarding the second aspect of notice, appellant's "void for vagueness" argument is belied by his sworn responses during the guilty-plea inquiry. As explained by the

Supreme Court, "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Parker v. Levy*, 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974), *quoting United States v. National Dairy Products Corp*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–98, 9 L.Ed.2d 561 (1963), and citing *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954). Appellant's responses establish that he had actual notice that his conduct constituted criminal behavior. He admitted that he was aware of an Air Force custom against fraternization. He further admitted that he knew violation of that custom subjected him to criminal prosecution and that he violated the custom. Those responses satisfy the requirement that an accused "reasonably understand" his conduct is proscribed.

54. I decline to join the examination of the changes in Air Force policy to determine if there was a custom against appellant's conduct. We should confine ourselves to "the four corners of the record" in determining the providence of a guilty plea. *See United States v. Rooks*, 29 MJ 291, 293 (CMA 1989).

55. Furthermore, this effort to determine what is current Air Force policy necessarily involves factfinding. Our Court has consistently treated the question whether there is a custom against fraternization as a question of fact. *See United States v. Johanns*, 20 MJ at 160 ("In the face of this determination by a tribunal which has factfinding powers ...."); at 165 (footnote omitted) (Cox, J.) ("I am prepared to defer to the expertise and factfinding authority of the Court of Military Review...."). *See also United States v. Ap-*

*pel*, 31 MJ 314, 320 (CMA 1990) (Everett, C.J.) (Custom may not be judicially noticed under Mil.R.Evid. 201A) (Judicial notice of law), Manual for Courts–Martial, United States, 1984, because it is a question of fact; it must qualify for judicial notice under Mil. R.Evid. 201(b) (**Judicial notice of adjudicative facts**).

56. In this case the Court of Military Review declined to make findings of fact regarding the existence of a custom at the time of Lieutenant Boyett's alleged misconduct. 37 MJ at 878. Our Court has no factfinding power and accordingly lacks authority to make a finding of fact that the Court of Military Review declined to make, especially on a guilty plea record. Art. 67(c), UCMJ, 10 USC § 867(c) (1989). *See United States v. Harrison*, 26 MJ 474 (CMA 1988). Accordingly, I decline to join in any holding, based on evidence outside the guilty-plea inquiry, regarding the existence of a custom against fraternization in the Air Force.

57. I join the lead opinion in answering Issue II in the negative. The doctrine of *stare decisis* applies to questions of law, not findings of fact. *Johanns* found, as a matter of fact, that there was no custom against fraternization in the Air Force at that time. In appellant's case the Court of Military Review did not overrule *Johanns*, but correctly held (37 MJ at 878) that *Johanns* was limited to its facts. *See United States v. Kroop*, 38 MJ 470, 475 (CMA 1993) (Gierke, J., dissenting) (absence of a custom in October 1981 does not mean that there was not a custom when Colonel Kroop was tried).

For the foregoing reasons, I concur in the result.